**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------- x

ITOFFEE R. GAYLE                                          :
                                                         :        Case No. 17-cv-5867 (JMF)
                        Plaintiff,                        :
                                                         :
              v.                                         :
                                                         :
HOME BOX OFFICE, INC,                                    :
                                                         :
                        Defendant.                       :
                                                         :
----------------------------------------------------------- x


## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT HOME BOX OFFICE, INC.'S MOTION TO DISMISS


Rachel F. Strom
Adam Lazier
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, New York 10020-1104
Phone:  (212) 489-8230
Fax:  (212) 489-8340
rachelstrom@dwt.com

*Counsel for Defendant*
 *Home Box Office, Inc.*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................1

FACTUAL BACKGROUND....................................................................................1

ARGUMENT ..........................................................................................................4

      I.     HBO'S FLEETING "USE" OF THE GRAFFITI CANNOT SUPPORT A COPYRIGHT CLAIM.....................................................................................4

            A.     This Is a Quintessential Example of Non-Actionable *De Minimis* Use ........................................................................................... 5

            B.     Even if This Court Does Not Find The Use to Be *De Minimis*, HBO's Use of Plaintiff's Work was Fair Use............................................. 7

      II.    PLAINTIFF'S TRADEMARK INFRINGEMENT CLAIM FAILS AS A MATTER OF LAW ...................................................................................13

            A.     Plaintiff Fails to Plausibly Allege a Likelihood of Confusion.................. 13

            B.     Plaintiff's Trademark Claim is Barred by the First Amendment.............. 16

CONCLUSION.....................................................................................................20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ahmed v. GEO USA LLC,*
   2015 WL 1408895 (S.D.N.Y. Mar. 27, 2015) ....................................................................14

*American Express Co. v. Goetz,*
   515 F.3d 156 (2d Cir. 2008)..............................................................................................14

*Amsinck v. Columbia Pictures Industries, Inc.,*
   862 F. Supp. 1044 (S.D.N.Y. 1994)..............................................................................11, 12

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009).......................................................................................................4, 14

*Bell v. Blaze Magazine,*
   2001 WL 262718 (S.D.N.Y. Mar. 16, 2001) ....................................................................11

*Bill Graham Archives v. Dorling Kindersley Ltd.,*
   448 F.3d 605 (2d Cir. 2006)................................................................................................9

*Campbell v. Acuff-Rose Music, Inc.,*
   510 U.S. 569 (1994)...............................................................................................8, 9, 11

*Caterpillar Inc. v. Walt Disney Co.,*
   287 F. Supp. 2d 913 (C.D. Ill. 2003) ................................................................................15

*Cliffs Notes, Inc. v. Bantam Doubleday Dell Publ'g Grp.,*
   886 F.2d 490 (2d Cir. 1989)..............................................................................................16

*E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.,*
   547 F.3d 1095 (9th Cir. 2008) .............................................................................17, 18, 19

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,*
   499 U.S. 340 (1991)............................................................................................................8

*Fortres Grand Corp. v. Warner Bros. Entm't Inc.,*
   947 F. Supp. 2d 922 (N.D. Ind. 2013) ..............................................................................15

*Gottlieb Dev. LLC v. Paramount Pictures Corp.,*
   590 F. Supp. 2d 625 (S.D.N.Y. 2008)........................................................................ *passim*

*Guthrie Healthcare Sys. v. ContextMedia, Inc.,*
   826 F.3d 27 (2d Cir. 2016)...........................................................................................13, 14

ii

*Higgins v. Detroit Pub. Television Foundation*,
  4 F. Supp. 2d 701 (E.D. Mich. 1998)............................................................................11

*Italian Book Corp. v. American Broadcasting Cos.*,
  458 F. Supp. 65 (S.D.N.Y. 1978)..................................................................................10

*LaFaro v. New York City Cardiothoracic Grp.*,
  570 F.3d 471 (2d Cir. 2009)...........................................................................................4

*Louis Vuitton Malletier S.A. v. Warner Bros. Entertainment Inc.*
  868 F. Supp. 2d 172 (S.D.N.Y. 2012).................................................................. *passim*

*Maxtone-Graham v. Burtchaell*,
  803 F.2d 1253 (2d Cir. 1986)..........................................................................................9

*Medina v. Dash Films, Inc.*,
  2016 WL 3906714 (S.D.N.Y. July 14, 2016) ..............................................................2, 17

*New Era Publ'ns Int'l, ApS v. Carol Publ'g Grp.*,
  904 F.2d 152 (2d Cir. 1990)............................................................................................9

*Peter F. Gaito Architecture, LLC*,
  602 F.3d 57 (2d Cir. 2010)..............................................................................................2

*Ringgold v. Black Entm't Television, Inc.*,
  126 F.3d 70 (2d Cir. 1997).........................................................................................5, 6

*Rogers v. Grimaldi*,
  875 F.2d 994 (2d Cir. 1989).........................................................................16, 17, 18, 19

*Sandoval v. New Line Cinema Corp.*,
  973 F. Supp. 409, 413 (S.D.N.Y. 1997), *aff'd* 147 F.3d 215 (2d Cir. 1998) .................. *passim*

*Seltzer v. Green Day, Inc.*,
  725 F.3d 1170 (9th Cir. 2013) ........................................................................................9

*Sherwood 48 Assocs. v. Sony Corp. of Amer.*,
  213 F. Supp. 2d 376 (S.D.N.Y. 2002), *aff'd in part, vacated in part on other
  grounds,* 76 F. App'x 389 (2d Cir. 2003) .............................................................15, 17, 18

*Stoner v. Walsh*,
  772 F. Supp. 790 (S.D.N.Y. 1991)...................................................................................2

*Streetwise Maps, Inc. v. Vandam*,
  159 F.3d 739 (2d Cir. 1998)..........................................................................................14

*TCA Television Corp. v. McCollum*,
  839 F.3d 168 (2d Cir. 2016)............................................................................................8

iii

*Teichmann v. N.Y.*,
    769 F.3d 821 (2d Cir. 2014)...............................................................................4

*Threshold Media v. Relativity Media, LLC*,
    166 F. Supp. 3d 1011 (C.D. Cal 2013) .....................................................10, 11

*Time, Inc. v. Peterson Publ'g Co. L.L.C.*,
    173 F.3d 113 (2d Cir. 1999)..............................................................................13

*Twentieth Century Fox Television v. Empire Distrib. Inc.*,
    161 F. Supp. 3d 902 (C.D. Cal. 2016) ..............................................................17

*Twin Peaks Prods, Inc. v. Publ'ns Int'l Ltd.*,
    996 F.2d 1366 (2d Cir. 1993)............................................................................19

*Univ. of Alabama Bd. of Trustees v. New Life Art, Inc.*,
    683 F.3d 1266 (11th Cir. 2012) ........................................................................18

*VIRAG, S.R.L. v. Sony Computer Entm't Am. LLC*,
    2015 WL 5000102 (N.D. Cal. Aug. 21, 2015) ..................................................18

**Statutes**

17 U.S.C. § 106 ........................................................................................................7

17 U.S.C. § 107 *et seq.*.................................................................................... *passim*

17 U.S.C. § 411(a) ...................................................................................................5

15 U.S.C. § 1114 ....................................................................................................17

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)........................................................................................1, 8

4833-5545-2748v.6 3960026-000011

Defendant Home Box Office, Inc. ("HBO") respectfully submits this memorandum of law in support of its motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

When filming a scene for the original series *Vinyl* at nighttime on a street in Manhattan, HBO's cameras caught a fleeting and unfocused glimpse of graffiti rendered by plaintiff on what looks like a dumpster or a shed.  Ultimately, that dumpster was shown in the background of one scene of one episode of *Vinyl* as a character briskly walks by it.  The graffiti itself cannot be seen when watching the episode at normal speed, but when the episode is paused and then played, the graffiti appears on the dumpster in the dim background of the nighttime scene for approximately two seconds.  For this, Plaintiff has asserted claims for copyright and trademark infringement and seeks $1,000,000.00 in damages.

Plaintiff's copyright claim fails both because to the extent HBO used his graffiti at all, the use is clearly *de minimis* and non-actionable, and because it amounts to a fair use.  Plaintiff similarly fails to state a claim for trademark infringement – because the graffiti is hardly visible, he cannot plausibly allege a likelihood of confusion between his work and *Vinyl*.  And, in any event, his claim is barred by the First Amendment.  This case should accordingly be dismissed.

## FACTUAL BACKGROUND

Plaintiff Itoffee R. Gayle ("Plaintiff"), who is proceeding in this action *pro se*, filed a four paragraph Complaint in New York State Court, which HBO timely removed to this Court.  Dkt. 1, Ex. A ("Compl.").  Plaintiff alleges that he owns the trademark to the word mark "Art We All" and the copyright in a number of works associated with that phrase.  Compl. ¶ 1.

Defendant HBO produced and distributed the HBO original series *Vinyl*, which depicted the lives and careers of music producers living in New York City in the 1970s.  Compl. ¶ 2; Declaration of Rachel F. Strom ("Strom Decl."), Ex. A.

In his Complaint, Plaintiff claims only that HBO "used" his trademark and copyright in the fifth episode of season one of *Vinyl* (the "Episode") "without permission or consent." Compl. ¶ 2.  While the Complaint provides no further information about the alleged infringement, Plaintiff cites prior correspondence between Plaintiff's former legal counsel and HBO, which does flesh out his legal theory.  Compl. ¶ 3.[1]  On April 23, 2017, Plaintiff's former counsel sent HBO a letter claiming that HBO used Plaintiff's trademark and copyrighted art work of the words "Art We All One" in the Episode "at 49:38." *Id.*; Strom Decl. Ex. B (the "Demand Letter").  Plaintiff claimed, among other things, the use amounted to federal trademark and copyright infringement because HBO "has not been given permission to use his intellectual property."  Strom Decl., Ex. B.

After HBO was unable to find Plaintiff's work in the Episode, Plaintiff's former counsel forwarded a screenshot from the Episode in which graffiti resembling "Art We All One" (the "Graffiti") can dimly be seen in the corner of the screen on what looks like a dumpster or shed (the "Dumpster"), which he said was located at West 125th Street and St. Nicholas Avenue in New York City:

---

[1] This Court may consider this correspondence and the Episode on this motion because they are incorporated by reference to the Complaint.  Compl. ¶¶ 2-3; s*ee Peter F. Gaito Architecture, LLC*, 602 F.3d 57, 64 (2d Cir. 2010) (considering works at issue on motion to dismiss because "in copyright infringement actions, the works themselves supersede and control contrary descriptions of them, including any contrary allegations, conclusions or descriptions of the works contained in the pleadings."); *Medina v. Dash Films, Inc.*, 2016 WL 3906714, at *4 (S.D.N.Y. July 14, 2016) (considering defendant's films on motion to dismiss in trademark infringement action because "[t]he work is centrally incorporated into the complaint"); *Stoner v. Walsh*, 772 F. Supp. 790, 792 (S.D.N.Y. 1991) (considering demand letter and follow-up correspondence on motion dismiss as incorporated by reference in Complaint).

2





Strom Decl., Ex. C.

  The scene identified by Plaintiff's former counsel includes a shot of an actor walking down a New York street at night.  Strom Decl., Ex. A at 46:10.  Although the camera remains focused on the actor throughout, the streetscape is visible behind her.  For approximately four seconds, the Dumpster is visible in the background – although out of focus and in dim light.  Apparently, Plaintiff painted his Graffiti on that Dumpster, and the portion of the Dumpster on which the Graffiti appears is on camera for approximately two seconds of the over 52 minute-long Episode.  The Graffiti is never shown in focus, it is never in the foreground, and it never occupies even a majority of the screen.  *Id.*  Nevertheless, Plaintiff asserts claims for copyright and trademark infringement, and seeks $1,000,000.00 in damages.  Compl., *generally.*

3

## ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In applying this standard, the Court need not credit conclusory legal allegations or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557); *see also LaFaro v. New York City Cardiothoracic Grp.*, 570 F.3d 471, 475-76 (2d Cir. 2009) ("We are not bound to accept as true legal conclusions couched as factual allegations."). Where the well-pled facts do not "plausibly give rise to an entitlement to relief," dismissal is appropriate. *Iqbal*, 556 U.S. at 679.

Although a court should "liberally construe" the complaint of a *pro se* Plaintiff, "we still require that he plead facts sufficient to 'state a claim to relief that is plausible on its face.'" *Teichmann v. N.Y.*, 769 F.3d 821, 825 (2d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). The deficiencies in the Complaint, however, are not simply a matter of pleading. A simple comparison of the Episode and the Graffiti establish that even a well-pled Complaint could not state a claim for either copyright or trademark infringement. This action should be dismissed.

## I.  HBO'S FLEETING "USE" OF THE GRAFFITI CANNOT SUPPORT A COPYRIGHT CLAIM

Because Plaintiff's Graffiti is barely – if at all – noticeable in the Episode, Plaintiff's copyright claim fails for two reasons.[2] Most importantly, the "use" here was so inconsequential

---

[2] Plaintiff has failed to allege that he holds a registered copyright in the Graffiti at issue here and a search of the U.S. Copyright Office records shows that he has none in this particular work. Strom Decl. ¶ 5. According to the Demand Letter, Plaintiff holds a registered copyright "in the works attached hereto" –

it is a non-infringing *de minimis* use.  Indeed, if HBO's use of the Graffiti here – in the far

background of a dimly lit scene for about two seconds – is not considered *de minimis,* the *de

minimis* use doctrine would be written out of the law.  Additionally, showing actual graffiti on an

actual dumpster on a street as a character on *Vinyl* walks down that street is a fair use.

A.       **This Is a Quintessential Example of Non-Actionable *De Minimis* Use**

To prevail on his copyright claim here, Plaintiff must prove that "(1) unauthorized

copying of the copyrighted work occurred, and (2) the infringing work is substantially similar."

*Gottlieb Dev. LLC v. Paramount Pictures Corp.*, 590 F. Supp. 2d 625, 631 (S.D.N.Y. 2008).  To

prove substantial similarity, a plaintiff must show, among other things, "that the amount that was

copied is more than de minimis." *Id.*

The *de minimis* doctrine provides that "if the copying is…so 'trivial' as to fall below the

quantitative threshold of substantial similarity, the copying is not actionable."  *Id.* at 632; *see

also Ringgold v. Black Entm't Television, Inc.*, 126 F.3d 70, 74 (2d Cir. 1997) ("*de minimis* can

mean that copying has occurred to such a trivial extent as to fall below the quantitative threshold

of substantial similarity, which is always a required element of actionable copying.").  In

applying the *de minimis* doctrine to visual works like the Episode, "the observability of the

copyrighted work is critical, and courts will consider the length of time the copyrighted work is

observable as well as factors such as focus, lighting, camera angles, and prominence."  *Gottlieb*,

490 F. Supp. 2d at 632 (citation omitted); *see also Ringgold*, 126 F.3d at 75.  Observability is

measured from the perspective of the "average lay observer."  *Sandoval v. New Line Cinema

Corp.*, 147 F.3d 215, 218 (2d Cir. 1998).  A court may apply the *de minimis* doctrine on a motion

to dismiss.  *Gottlieb*, 490 F. Supp. 2d at 632 (citing cases).

which did not include the Graffiti, the work at issue.  Strom Decl., Ex. B.  In the absence of a registered
copyright in the Graffiti, Plaintiff may not sue for copyright infringement, 17 U.S.C. § 411(a), and his
copyright claim must be dismissed.

Accordingly, courts have consistently recognized that a defendant's use of fleeting, out-of-focus glimpses of a copyrighted work in the background of a show is *de minimis* and not actionable.  The Second Circuit's decision in *Sandoval* is directly on point here.  In *Sandoval*, a photographer sued the producer of the film *Seven* over a scene where ten of his photographs appeared out-of-focus in the background of a scene in eleven different camera shots for a total of about 35 seconds.  147 F.3d at 216.  The Court held that the defendant's use was *de minimis*, because the photographs were "not displayed with sufficient detail for the average lay observer to identify even the subject matter of the photographs, much less the style used in creating them.  The photographs are displayed in poor lighting and at great distance.  Moreover, they are out of focus and displayed only briefly."  *Id.* at 218.  "In short," the Court held, this was a case where "a visual work, though selected by production staff for thematic relevance, or at least for its decorative value, might ultimately be filmed at such distance and so out of focus that a typical program viewer would not discern any decorative effect that the work of art contributes to the set."  *Id.*; *cf. Ringgold*, 126 F.3d at 75-77 (use of clearly visible poster that, at times, took of majority of the screen "with sufficient observable detail" for a total of 26 seconds not *de minimis*).

Similarly, the plaintiff in *Gottlieb v. Paramount Pictures Corp.* claimed that the defendant infringed his copyright and trademark in a pinball machine by including the machine in a set for the film *What Women Want*.  Although the plaintiff alleged that the machine appeared in the film for about three minutes, the court dismissed the copyright claim, holding that the defendant's use of the machine "was *de minimis* as a matter of law."  490 F. Supp. 2d at 630-32.  The court noted that the machine "is always in the background; it is never seen in the foreground.  It never appears by itself or in a close-up.  It is never mentioned and plays no role in the plot.  It

is almost always partially obscured…and is fully visible for only a few seconds during the whole scene…the 'average lay observer would not be able to discern any distinctive elements of Gottlieb's Designs." *Id.* at 633. Although the court accepted that the machine "was chosen by the production staff because it fit in with the 'sporty' theme of the background in the scene," it concluded that "it was one of numerous background items, and it was filmed in such a manner and appears so fleetingly that" any use was *de minimis. Id.* at 634.

If anything, the case for the *de minimis* defense is even stronger here than in either of those cases. The Graffiti only appears onscreen at all for about two seconds – far less than the thirty-five seconds in *Sandoval*, or the total of *three minutes* held to be *de minimis* in *Gottlieb*. And the "observability" of the Graffiti – partially obscured, out of focus, in low light, and deep in the background – is so poor that the average lay observer would never recognize "any distinctive elements" of Plaintiff's design on the Dumpster, if he or she were somehow able to spot the Graffiti at all. In short, a visual work could scarcely be less observable than the Graffiti here. It is hard to imagine when the *de minimis* defense would ever apply if not in this case. Plaintiff's claim for copyright infringement should accordingly be dismissed.

### B.    Even if This Court Does Not Find The Use to Be *De Minimis*, HBO's Use of Plaintiff's Work was Fair Use

Even if HBO's use of the graffiti is not *de minimis*, those fleeting shots are protected as a fair use.[3] While the Copyright Act grants copyright owners a bundle of certain exclusive rights, including the right "to reproduce the copyrighted work in copies," 17 U.S.C. § 106, "the fair use of a copyrighted work . . . for purposes such as criticism, comment, [or] news reporting . . is not an infringement of copyright." 17 U.S.C. § 107. Because "[t]he primary objective of copyright

---

[3] A court should not conduct a fair use analysis until first determining that the alleged infringement is not *de minimis*. *Sandoval*, 147 F.3d at 217.

is not to reward the labor of authors, but '[t]o promote the Progress of Science and useful Arts,'" the copyright laws assure "authors the right to their original expression, *but encourages others to build freely upon the ideas and information conveyed by a work.*"  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349-50 (1991) (emphasis added) (quoting U.S. Const. art. I, § 8, cl. 8 and citing *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 556-57 (1985)).

Section 107 sets forth four non-exclusive factors that courts must consider in determining whether a particular use of a copyrighted work is a fair use:

(1)  the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2)  the nature of the copyrighted work;

(3)  the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4)  the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107.  These four factors must be considered together, and none may be "treated in isolation."  *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578 (1994).

The Second Circuit has held that, where fair use is established on the face of a complaint or by comparing the works at issue side-by-side, it may be decided by the court on a Rule 12(b)(6) dismissal motion.  *TCA Television Corp. v. McCollum*, 839 F.3d 168, 178 (2d Cir. 2016).  Here, the Court is well-equipped to conduct a fair use analysis at the pleading stage, as the Court can easily compare the images of the Dumpster in *Vinyl* with Plaintiff's copyrighted work.  Applying the fair use factors compels a finding that, as a matter of law, the challenged use is a fair uses that cannot give rise to an infringement claim.

### 1.     The Purpose and Character of HBO's Use

The first fair use factor weighs decidedly in HBO's favor because HBO made a transformative use of the Graffiti.  This factor requires the Court to examine the "purpose and character of the use."  17 U.S.C. § 107(1).  The primary focus of the first fair use factor is "whether and to what extent the new work is 'transformative,'" *Campbell*, 510 U.S. at 579 (citation omitted), meaning whether the new use "adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message."  *Id.*  As the *Campbell* Court observed, "transformative works . . . lie at the heart of the fair use doctrine's guarantee of breathing space . . . ."  *Id.*[4]

Here, this factor strongly supports a finding of fair use.  *Sandoval* is once again particularly instructive.  Before that case reached the Second Circuit, the District Court in *Sandoval* resolved the case in the defendant's favor on fair use grounds.[5]  The court held that the film's use of the photographs was transformative, because it "used the visual images created in plaintiff's work in furtherance of a distinct visual aesthetic and overall mood."  *Sandoval v. New Line Cinema*, 973 F. Supp. 409, 413 (S.D.N.Y. 1997).  *See also Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1176 (9th Cir. 2013) (band's use of copyrighted street art in video backdrop for concert set was transformative because it "used the original as 'raw material'" and, although the

---

[4] It is well-established in the Second Circuit that a defendant's status as a for-profit enterprise is not a dispositive factor in evaluating the purpose and character of the defendant's use.  *See*, *e.g.*, *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 612 (2d Cir. 2006) (biography of Grateful Dead did not seek to exploit the plaintiff's images' expressive value for commercial gain); *New Era Publ'ns Int'l, ApS v. Carol Publ'g Grp.*, 904 F.2d 152, 156 (2d Cir. 1990) ("To be sure, the author and appellant want to make a profit in publishing the book.  But the author's use of material 'to enrich' his biography is protected fair use, 'notwithstanding that he and his publisher anticipate profits.'" (citation omitted)); *Maxtone-Graham v. Burtchaell*, 803 F.2d 1253, 1262 (2d Cir. 1986) (Section 107(1) does not "requir[e] . . . a clear-cut choice between two polar characterizations, 'commercial' and 'non-profit'"; "[w]ere that the case, fair use would be virtually obliterated, for '[a]ll publications presumably are operated for profit.").

[5] The Second Circuit affirmed this decision on *de minimis* grounds, as discussed above, without comment on the merits of the fair use issue.

9

original was prominently featured, "it remains only a component of what is essentially a street-art focused music video about religion.").

That perfectly describes HBO's use of the Graffiti in the Episode – HBO used the work not for its decorative and aesthetic appeal (which viewers could not even see because of the poor light and lack of focus), but instead gave it a "further purpose" by using it as an element of a realistic New York streetscape.

HBO's use of the Graffiti tips even further in favor of fair use because it occurred only by virtue of HBO's decision to film on location on the same public street where Plaintiff had placed the Graffiti on the Dumpster – one that presumably he does not own.  This scenario is no different than what happened in *Italian Book Corp. v. American Broadcasting Cos.*, 458 F. Supp. 65 (S.D.N.Y. 1978).  In that case, an ABC television news crew recorded video of New York City's San Gennaro festival, including a portion of a parade consisting of a band on a float playing plaintiff's copyrighted music, for use in a news report about the festival.  *Id*. at 67. Recognizing that "ABC's employees had no advance knowledge that a band would come along on a float playing this particular song," the court found that the fortuitous use of the music in ABC's news reporting was a fair use.  *Id.* at 68.  *See also Threshold Media v. Relativity Media, LLC,* 166 F. Supp. 3d 1011, 1026 (C.D. Cal 2013) (noting that "[F]ilmmakers recording real-life events 'almost invariably copy publicly known, expressive works.'") (citation omitted).  Just as in *Italian Book*, it is self-evident from the Episode that the glimpse of the Graffiti is nothing more than an incidental part of the real-life streetscape.  Indeed, it would be impossible to accurately depict a scene on that New York City street *without* including the Graffiti in the background.

*Italian Book*'s recognition that fair use protects incidental recordings of copyrighted works serves an important purpose. If a producer were required to find and obtain a license from every graffiti or street artist whose work appeared in the background of its footage, filming on location in a city like New York would be effectively impossible. Even in this case, other examples of graffiti can be seen on the Dumpster – and all over the street. If the fair use defense does not apply, producers like HBO would be forced to choose between the daunting task of tracking down and obtaining licenses from each of those street artists or portraying an unrealistic and sanitized version of New York. Thus, this factor tips heavily in HBO's favor.

### 2.      The Nature of the Copyrighted Work

The second factor considers "the nature of the copyrighted work." 17 U.S.C. § 107. Even assuming that Plaintiff's Graffiti of the words "Art We All One" is a creative work,[6] courts have found this factor to be of little significance in cases involving fleeting, background uses of copyrighted work. *See, e.g., Amsinck v. Columbia Pictures Industries, Inc.*, 862 F. Supp. 1044, 1050 (S.D.N.Y. 1994); *Threshold Media,* 166 F. Supp. 3d at 1026; *Higgins v. Detroit Pub. Television Foundation*, 4 F. Supp. 2d 701, 707 (E.D. Mich. 1998). This factor should therefore not weigh heavily in the Court's analysis here.

### 3.      The Amount and Substantiality of HBO's Use

The third factor – the amount and substantiality of the portion of the copyrighted material used in relation to the copyrighted work as a whole – also favors a finding of fair use. In applying this factor, "the extent of permissible copying varies with the purpose and character of the use." *Campbell*, 510 U.S. at 586-87.

---

[6] This Court has, however, recognized that short phrases and slogans "do not exhibit the minimal creativity required for [copyright] protection." *Bell v. Blaze Magazine*, 2001 WL 262718, at *3 (S.D.N.Y. Mar. 16, 2001) (citing *Arica Institute, Inc. v. Palmer*, 970 F.2d 1067, 1072 (2d Cir. 1992)).

11

Here too, the observability of the copyrighted work is an important factor.  In *Sandoval,* for instance, the District Court held that the defendant's use of the plaintiff's complete photographs in the background of *Seven* did not preclude a finding of fair use because the photographs were only recognizable "after careful scrutiny and repeated viewings," and "[t]his fleeting and obscured use of plaintiff's work did not and cannot capture the essence or value of the plaintiff's work."  973 F. Supp. at 413; *Amsinck*, 862 F. Supp. at 1050 (S.D.N.Y. 1994) (defendant's use of copyrighted mobile as film prop was fair use because "defendants rightly point out that the Mobile is seen for only a few seconds at a time, and the artwork itself is visible for less than 96 seconds.").

HBO used no more of the Graffiti than was necessary to create its realistic New York street scene.  And, as in *Sandoval*, the fleeting, barely-recognizable glimpse of the Graffiti – reduced from its full size to the corner of a viewer's screen – does not capture the "essence" or "heart" of Plaintiff's work.  The third factor therefore weighs in favor of fair use.

### 4.     The Effect of HBO's Use on the Graffiti's Market Value

The fourth factor considers "the effect of the use upon the potential mark for or value of the copyrighted work."  17 U.S.C. § 107(a).  This consideration decisively favors fair use here.

Again *Sandoval* is instructive.  There, the court explained that the fourth factor "weighs decidedly in defendants' favor" because "the defendant's fleeting and obscured use of the Photographs as part of the background to a movie scene cannot be considered a substitute for the Photographs by any stretch of the imagination.  Sandoval's work is virtually undetectable in the scene at issue.  Thus, the value of and market potential for his work is in no way usurped, since the public is not even aware after viewing *Seven* that they have had a glimpse of Sandoval's work."  973 F. Supp. at 414.  Any suggestion that a potential customer would prefer a shrunken,

12

grainy, dark, and out-of-focus copy of Plaintiff's work to the real thing should similarly be rejected.

At bottom, the fair use defense ensures that Plaintiff may not simply install his artwork on property on a busy street – property he probably does not own – and then demand a license fee from everyone who happens to capture a glimpse of that work on film.  To the extent HBO used Plaintiff's Graffiti at all, it did so for the transformative purpose of accurately capturing a New York streetscape and because the work was already open to the public on that public street. For all of these reasons, HBO's use of the Graffiti is a clear-cut fair use under Section 107, and Plaintiff's copyright infringement claim should be dismissed as a matter of law.

## II.    PLAINTIFF'S TRADEMARK INFRINGEMENT CLAIM FAILS AS A MATTER OF LAW

Plaintiff's claim for trademark infringement is no more viable than his copyright infringement claim.  His trademark claim is doomed not only because he cannot – and has not – plausibly alleged any consumer confusion between his mark for the words "Art We All One" and the Episode, but also by long-standing Second Circuit precedent strictly limiting the application of the Lanham Act to artistic works on First Amendment grounds.

### A.    Plaintiff Fails to Plausibly Allege a Likelihood of Confusion

In order to prevail on a claim for trademark infringement, "a plaintiff must demonstrate that it has a valid mark entitled to protection and that the defendant's use of it is likely to cause confusion."  *Time, Inc. v. Peterson Publ'g Co. L.L.C.*, 173 F.3d 113, 117 (2d Cir. 1999); *see also, e.g., Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 826 F.3d 27, 37 (2d Cir. 2016).  Even

13

assuming that Plaintiff has a valid mark entitled to protection here, his claim must be dismissed because he cannot possibly satisfy the confusion requirement.[7]

Confusion "turns on whether ordinary consumers are likely to be misled or confused as to the source of the product in question because of the entrance in the marketplace of the junior user's mark." *Guthrie Healthcare*, 826 F.3d at 37 (citations and internal punctuation omitted). Mere speculation is not enough: a finding of infringement requires "a probability of confusion, not a mere possibility," in which "a large number of purchasers likely will be confused as to the source of the goods in question." *Streetwise Maps, Inc. v. Vandam*, 159 F.3d 739, 743 (2d Cir. 1998); *see also Guthrie Healthcare*, 826 F.3d at 37 ("We have held that satisfaction of the likelihood-of-confusion standard requires a 'probability of confusion, not a mere possibility.'") (citation omitted).

For a trademark infringement claim to survive a motion to dismiss, *Iqbal* requires that a plaintiff plead a factual basis upon which a court could reasonably infer a likelihood of confusion. *See, e.g., Ahmed v. GEO USA LLC*, 2015 WL 1408895 (S.D.N.Y. Mar. 27, 2015) (JMF), at *3 ("[B]road statements – devoid of any factual detail – are plainly insufficient as a matter of law" to survive a motion to dismiss for failure to plausibly allege confusion) (citing cases); *Gottlieb*, 590 F. Supp. at 635 (granting motion to dismiss trademark infringement claim on confusion grounds where allegation of confusion "is simply not plausible.").

There is no plausible basis on which a court could infer that the mere presence of the Graffiti in an episode of *Vinyl* would lead consumers to believe that Plaintiff sponsors or is otherwise associated with the Episode or with HBO. Courts have, in fact, consistently and

---

[7] Again, for the purpose of this motion only, HBO will assume that Plaintiff has a valid trademark for the words "Art We All One" in his artwork. Courts, however, recognize that trademark protection of a slogan is not appropriate where that slogan is not used to "differentiate or identify the origin of…goods or services," but instead "*is* the creative work itself." *American Express Co. v. Goetz*, 515 F.3d 156, 159-161 (2d Cir. 2008).

14

squarely rejected this argument, recognizing that viewers "are sophisticated enough to know that the mere presence of a [trade mark] in a film, especially one that is briefly and intermittently shown, does not indicate that the brand sponsored the movie." *Louis Vuitton Malletier S.A. v. Warner Bros. Entertainment Inc.* 868 F. Supp. 2d 172, 183 n. 18 (S.D.N.Y. 2012); *see also Sherwood 48 Assocs. v. Sony Corp. of Amer.,*, 213 F. Supp. 2d 376, 377 (S.D.N.Y. 2002), *aff'd in part, vacated in part on other grounds,* 76 F. App'x 389 (2d Cir. 2003) (no likelihood of confusion from digital alteration of plaintiff's buildings appearing in background of film scene); *Fortres Grand Corp. v. Warner Bros. Entm't Inc.*, 947 F. Supp. 2d 922, 930-31 (N.D. Ind. 2013) ("simply no plausible claim" of confusion arising out of use of computer software mark in film); *Caterpillar Inc. v. Walt Disney Co.*, 287 F. Supp. 2d 913, 919-20 (C.D. Ill. 2003) (no confusion arising out of use of plaintiff's vehicle in film).

*Gottlieb* is once again directly on point. The plaintiff in that case also alleged that the defendant's use of its trademark on its pinball machine in the background of the film set of Paramount's *What Women Want* constituted trademark infringement. On a motion to dismiss, however, the court found that the plaintiff's "assertion that the appearance of its trademark in the Film would confuse ordinarily prudent consumers as to the sponsorship of its pinball machines is simply not plausible." *Gottlieb*, 590 F. Supp. 2d at 635. In so holding the court reasoned that "[o]n a viewing of the Film, it would be difficult for even a keen observer to pick out Gottlieb's trademark, as it appears in the background of the scene. The trademark is visible at various places on the pinball machine, but it occupies only a minute fraction the frame for three segments lasting approximately three seconds each." *Id.* at 634-35. The Court also noted that "the pinball machine is merely part of the background, together with another pinball machine, a foosball table, and other furniture and furnishings." *Id.* Thus, the court held that "no viewer of

15

the Film would consider whether Paramount sponsored the pinball machine or Gottlieb sponsored the Film." *Id.*

Here, just as in *Gottlieb*, Plaintiff cannot plausibly allege consumer confusion.  Because the Graffiti is barely visible – even if you freeze the frame right on the Graffiti – an ordinary viewer (much less "a large number of consumers") would never even know the Graffiti appears in the Episode at all.  But even a viewer who managed to spot the Graffiti would have no reason to believe that there was any association between Plaintiff and HBO.  The show never focuses on the Graffiti and certainly gives it no special prominence – in fact, HBO presented the Graffiti in exactly the same way as any other element of the background streetscape in that scene, including other graffiti in the background as well as other street and store signs.  In these circumstances, no different than those in *Gottlieb*, no reasonable viewer of the Episode would believe that Plaintiff sponsored *Vinyl* or that HBO sponsored Plaintiff.  Any allegation of confusion is not plausible, and Plaintiff's trademark claim fails as a matter of law.

### B.      Plaintiff's Trademark Claim is Barred by the First Amendment

If that were not sufficient, Plaintiff's trademark claim should also be dismissed because it is barred by the First Amendment.  The Second Circuit has recognized that "[b]ecause overextension of the Lanham Act restrictions…might intrude on First Amendment values, we must construe the Act narrowly to avoid such a conflict."  *Rogers v. Grimaldi*, 875 F.2d 994, 998 (2d Cir. 1989).  Since *Rogers*, a case dealing with the use of Ginger Rogers's name in a film title, courts in the Second Circuit have recognized that "the Lanham Act is inapplicable to 'artistic works' as long as the defendant's use of the mark is (1) 'artistically relevant' to the work and (2) not 'explicitly misleading' as to the source or content of the work."  *See Louis Vuitton*, 868 F. Supp. 2d at 178 (citing *Rogers*, 875 F.2d at 999, and *Twin Peaks Prods, Inc. v. Publ'ns Int'l Ltd.*, 996 F.2d 1366, 1379 (2d Cir. 1993)); *see also Cliffs Notes, Inc. v. Bantam Doubleday Dell*

16

*Publ'g Grp.*, 886 F.2d 490, 495 (2d Cir. 1989) (holding that "the *Rogers* balancing approach is generally applicable to Lanham Act claims against works of artistic expression.").[8]  Courts in this district have not hesitated to apply the *Rogers* framework at the motion to dismiss stage.  *See Medina*, 2016 WL 3906714, at *5 ("[c]ontrary to plaintiff's arguments, determination of these standards is not premature at this stage," and granting motion to dismiss); *Louis Vuitton*, 868 F. Supp. 2d at 183 (rejecting plaintiff's argument that "the *Rogers* test cannot be assessed on a motion to dismiss" and dismissing case).

     As an initial matter, it is clear that the Episode qualifies as an "artistic work" to which the *Rogers* framework applies.  *Rogers* itself was about a film, and courts have regularly applied the test to films, television shows, and other visual works, including those made for profit.  *See, e.g., Medina*, 2016 WL 3906714, at *4-*5 (short film series); *Louis Vuitton*, 868 F. Supp. 2d at 177 (film *The Hangover: Part II*); *Sherwood 48 Assocs.*, 213 F. Supp. 2d at 377 (film *Spider-Man*); *Twentieth Century Fox Television v. Empire Distrib. Inc.*, 161 F. Supp. 3d 902, 907 (C.D. Cal. 2016) (television series *Empire*).

     Next, the Graffiti is artistically relevant to the Episode.  "The threshold for 'artistic relevance' is purposely low and will be satisfied unless the use 'has *no* artistic relevance to the underlying work *whatsoever*.'"  *Louis Vuitton*, 868 F. Supp. 2d at 178 (quoting *Rogers*, 875 F.2d at 999) (emphasis in original); *see also E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1100 (9th Cir. 2008) ("[T]he level of relevance merely must be above zero.").  The purpose of the artistic relevance requirement is simply to ensure that the defendant did not

---

[8] Although Plaintiff does not cite the statutory basis for his trademark infringement claim, the statutory basis for federal trademark infringement claims lies in in the Lanham Act, 15 U.S.C. § 1114.  However, the *Rogers* analysis also applies to analogous state law claims, so Plaintiff cannot save his claim by amending his Complaint to allege state law unfair competition or something similar.  *See Medina*, 2016 WL 3906714, at *4.

include the mark "just to exploit [its] publicity value." *Rogers*, 875 F.2d at 1001; *see also Louis Vuitton*, 868 F. Supp.2d at 178.

Under this standard, courts have repeatedly recognized that producers are entitled to use trademarks as background details to create a realistic atmosphere. *See E.S.S.,* 547 F.3d 1095 (applying *Rogers* framework and rejecting claim based on video game that included a simulated version of East Los Angeles that players could explore, which included a strip club called "Pig Pen" as the strip club's name was artistically relevant because it allowed the game to create the "look and feel" of East Los Angeles); *see also Sherwood 48 Assocs.,* 213 F. Supp. 2d at 377 (digital alteration of plaintiff's buildings in film's Times Square scene "serv[ed] the theatrically relevant purpose of orienting the viewer to the location"); *Univ. of Alabama Bd. of Trustees v. New Life Art, Inc.*, 683 F.3d 1266, 1278-79 (11th Cir. 2012) (college football uniforms artistically relevant to paintings of college football scenes "because the uniforms' colors and designs are needed for a realistic portrayal of famous scenes from Alabama football history."); *VIRAG, S.R.L. v. Sony Computer Entm't Am. LLC*, 2015 WL 5000102, at *11 (N.D. Cal. Aug. 21, 2015)  (use of mark as part of background trackside advertisement in auto-racing video game artistically relevant because it "allow[ed] players to drive on realistic simulations of European race tracks.").

This case is no different.  In the same way the defendant in *E.S.S.* used the plaintiff's trademark to create the "look and feel" of East Los Angeles, HBO was trying to give viewers a realistic sense of watching a scene on a New York City street.  As in *E.S.S.,* the best way to do that was to include the actual signs and graffiti on that street.  HBO therefore easily satisfies the artistic relevance prong of the *Rogers* test.

18

Finally, HBO did not "explicitly mislead" viewers as to the source or content of the Episode.  The relevant question at the second stage of the *Rogers* test is "whether the defendant's use of the mark is misleading in the sense that it induces members of the public to believe the work was prepared or otherwise authorized by the plaintiff."  *Louis Vuitton*, 868 F. Supp. 2d at 179; *see also Twin Peaks*, 996 F.2d at 1379 ("The question then is whether the title is misleading in the sense that it induces members of the public to believe the Book was prepared or otherwise authorized by TPP."); *E.S.S.*, 547 F.3d at 1100 ("The relevant question . . . is whether the Game would confuse its players into thinking that the Play Pen is somehow behind the Pig Pen or that it sponsors [the game].").  Although this determination is based on the same considerations as the ordinary likelihood-of-confusion analysis, "the finding of likelihood of confusion must be particularly compelling to outweigh the First Amendment interest recognized in *Rogers*."  *Twin Peaks*, 996 F.2d at 1379; *see also Louis Vuitton*, 868 F. Supp.2d at 181, 183 n. 18 ("Even if the court assumes, *arguendo*, that Louis Vuitton has stated a cognizable claim of confusion, its claim would fail anyway" under the First Amendment.  *Rogers* teaches that mark owners must accept 'some' confusion when outweighed by free speech interests.").

As discussed above, there is simply no plausible likelihood of confusion here.  But even if Plaintiff were somehow able to plead enough of a likelihood of confusion to survive a motion to dismiss in an ordinary trademark case, he certainly cannot meet the First Amendment's heightened standard of a "particularly compelling" likelihood.  Plaintiff's trademark claim is accordingly barred by the First Amendment, and it should be dismissed.

19

## **CONCLUSION**

For all of the foregoing reasons, HBO respectfully requests that the Complaint be dismissed in its entirety with prejudice.


DATED:  August 17, 2017                                Respectfully submitted,

                                                     DAVIS WRIGHT TREMAINE LLP

                              By:  */s/ Rachel F. Strom*
                                   Rachel F. Strom
                                   Adam Lazier
                                   1251 Avenue of the Americas, 21st Floor
                                   New York, New York  10020
                                   Phone:  (212) 489-8230
                                   Fax:  (212) 489-8340
                                   rachelstrom@dwt.com
                                   *Counsel for Defendant Home Box Office, Inc.*

20