**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x

ITOFFEE R. GAYLE                                  :

            Plaintiff,                      :     Case No. 17-cv-5867 (JMF)

                :

           v.                        :

                :

HOME BOX OFFICE, INC, RACHEL STROM,     :
ADAM LAZIER, and STEVE SAPIENZA         :

                :

           Defendants.                     :

------------------------------------------------------------ x

 

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT HOME BOX OFFICE, INC.'S MOTION TO DISMISS THE AMENDED COMPLAINT

Rachel F. Strom
Adam Lazier
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, New York 10020-1104
Phone:  (212) 489-8230
Fax:  (212) 489-8340
rachelstrom@dwt.com

*Counsel for Defendants*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ......................................................................................1

FACTUAL BACKGROUND.........................................................................................1

ARGUMENT ................................................................................................................5

I.     HBO'S FLEETING "USE" OF THE GRAFFITI CANNOT SUPPORT A
COPYRIGHT CLAIM...........................................................................................5

        A.    This Is a Quintessential Example of Non-Actionable *De Minimis* Use..................6

        B.    Even if This Court Does Not Find The Use to Be *De Minimis*, HBO's Use
of Plaintiff's Work was a Fair Use .......................................................9

        C.    Plaintiff Has Not Registered a Copyright in the Graffiti ......................................14

II.    PLAINTIFF'S TRADEMARK INFRINGEMENT AND "FEDERAL UNFAIR
COMPETITION" CLAIMS FAIL AS A MATTER OF LAW .........................................15

        A.    Plaintiff Fails to Plausibly Allege a Likelihood of Confusion..............................16

        B.    Plaintiff's Trademark Claims are Barred by the First Amendment ......................19

III.   PLAINTIFF'S STATE LAW CLAIMS ALSO FAIL ......................................................22

CONCLUSION..............................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ahmed v. GEO USA LLC*,
 No. 14-cv-7486(JMF), 2015 WL 1408895 (S.D.N.Y. Mar. 27, 2015)....................................16

*American Express Co. v. Goetz*,
 515 F.3d 156 (2d Cir. 2008)............................................................................................16

*Amsinck v. Columbia Pictures Industries, Inc.*,
 862 F. Supp. 1044 (S.D.N.Y. 1994).............................................................................12, 13

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009).....................................................................................................5, 16

*Bell v. Blaze Magazine*,
 No. 99 Civ. 12342(RCC), 2001 WL 262718 (S.D.N.Y. Mar. 16, 2001)................................12

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
 448 F.3d 605 (2d Cir. 2006)............................................................................................10

*Campbell v. Acuff-Rose Music, Inc.*,
 510 U.S. 569 (1994)..........................................................................................9, 10, 13

*Caterpillar Inc. v. Walt Disney Co.*,
 287 F. Supp. 2d 913 (C.D. Ill. 2003) ...............................................................................17

*Cliffs Notes, Inc. v. Bantam Doubleday Dell Publ'g Grp.*,
 886 F.2d 490 (2d Cir. 1989)............................................................................................19

*Coach, Inc. v. Horizon Trading USA Inc.*,
 908 F. Supp. 2d 426 (S.D.N.Y. 2012)..........................................................................15, 22

*Dove v. Fordham University*,
 56 F. Supp. 2d 330 (S.D.N.Y. 1999)...................................................................................4

*E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*,
 547 F.3d 1095 (9th Cir. 2008) ....................................................................................20, 21

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
 499 U.S. 340 (1991)........................................................................................................9

*Fortres Grand Corp. v. Warner Bros. Entm't Inc.*,
 947 F. Supp. 2d 922 (N.D. Ind. 2013) ..............................................................................17

*Gottlieb Dev. LLC v. Paramount Pictures Corp.*,
   590 F. Supp. 2d 625 (S.D.N.Y. 2008)............................................................. *passim*

*Guthrie Healthcare Sys. v. ContextMedia, Inc.*,
   826 F.3d 27 (2d Cir. 2016)...........................................................................16

*Higgins v. Detroit Pub. Television Foundation*,
   4 F. Supp. 2d 701 (E.D. Mich. 1998)................................................................12

*Italian Book Corp. v. American Broadcasting Cos.*,
   458 F. Supp. 65 (S.D.N.Y. 1978)...................................................................11

*LaFaro v. New York City Cardiothoracic Grp.*,
   570 F.3d 471 (2d Cir. 2009)...........................................................................5

*Louis Vuitton Malletier S.A. v. Warner Bros. Entertainment Inc.*
   868 F. Supp. 2d 172 (S.D.N.Y. 2012)...............................................17, 19, 20, 21

*Matusovsky v. Merrill Lynch*,
   186 F. Supp.2d 397 (S.D.N.Y. 2002)...............................................................15

*Maxtone-Graham v. Burtchaell*,
   803 F.2d 1253 (2d Cir. 1986)........................................................................10

*Medina v. Dash Films, Inc.*,
   No. 15-cv-2551(KBF), 2016 WL 3906714 (S.D.N.Y. July 14, 2016) ..........3, 19, 22

*Membler.com LLC v. Barber*,
   No. 12-cv-4941(JS)(GRB), 2013 WL 5348546 (E.D.N.Y. Sept. 23, 2013)...........14

*Moody v. Morris*,
   608 F. Supp.2d 575, 57980 (S.D.N.Y. 2009)......................................................15

*New Era Publ'ns Int'l, ApS v. Carol Publ'g Grp.*,
   904 F.2d 152 (2d Cir. 1990)..........................................................................10

*Peter F. Gaito Architecture, LLC*,
   602 F.3d 57 (2d Cir. 2010)............................................................................3

*Ringgold v. Black Entm't Television, Inc.*,
   126 F.3d 70 (2d Cir. 1997)..........................................................................6, 7

*Rogers v. Grimaldi*,
   875 F.2d 994 (2d Cir. 1989).............................................................18, 19, 20, 21

*Sandoval v. New Line Cinema*,
   973 F. Supp. 409 (S.D.N.Y. 1997), *aff'd* 147 F.3d 215 (2d Cir. 1998).......... *passim*

iii

*Seltzer v. Green Day, Inc.*,
   725 F.3d 1170 (9th Cir. 2013) ........................................................11

*Sherwood 48 Assocs. v. Sony Corp. of Amer.*,
   213 F. Supp. 2d 376 (S.D.N.Y. 2002), *aff'd in part, vacated in part on other
   grounds*, 76 F. App'x 389 (2d Cir. 2003) ...............................17, 19, 20

*Sly Magazine v. Weider Publications L.L.C.*,
   346 F. App'x 721 (2d Cir. 2009) .....................................................22

*Stoner v. Walsh*,
   772 F. Supp. 790 (S.D.N.Y. 1991) .....................................................3

*Streetwise Maps, Inc. v. Vandam*,
   159 F.3d 739 (2d Cir. 1998) ...........................................................16

*TCA Television Corp. v. McCollum*,
   839 F.3d 168 (2d Cir. 2016) ...........................................................10

*Teichmann v. N.Y.*,
   769 F.3d 821 (2d Cir. 2014) .............................................................5

*Threshold Media v. Relativity Media, LLC*,
   166 F. Supp. 3d 1011 (C.D. Cal 2013) ..........................................11, 12

*Time, Inc. v. Petersen Pul'g Co.*,
   173 F.3d 113 (2d Cir. 1999) ...........................................................16

*Twentieth Century Fox Television v. Empire Distrib. Inc.*,
   161 F. Supp. 3d 902 (C.D. Cal. 2016) ..............................................19

*Twin Peaks Prods, Inc. v. Publ'ns Int'l Ltd.*,
   996 F.2d 1366 (2d Cir. 1993) ...........................................................21

*Univ. of Alabama Bd. of Trustees v. New Life Art, Inc.*,
   683 F.3d 1266 (11th Cir. 2012) ........................................................20

*VIRAG, S.R.L. v. Sony Computer Entm't Am. LLC*,
   No. 3:15-cv-012729-LB, 2015 WL 5000102 (N.D. Cal. Aug. 21, 2015)..............20

*Wagstaff-El v. Carlton Press Co.*,
   913 F.2d 56 (2d Cir. 1990)..............................................................14

*Watson v. Bretz & Coven, LLP*,
   2013 WL 12082741 (S.D.N.Y. Mar. 18, 2013) .....................................15

## Statutes

15 U.S.C. § 1114(a) .......................................................................15

15 U.S.C. § 1125(a) ................................................................................................................15

17 U.S.C. § 106 ........................................................................................................................9

17 U.S.C. § 107 *et seq.*..........................................................................................9, 10, 12, 13

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)........................................................................................................1, 10

Defendant Home Box Office, Inc. ("HBO") respectfully submits this memorandum of law in support of its motion to dismiss the Amended Complaint, Dkt. 19 ("Am. Compl.") pursuant to Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

In one scene in one episode of HBO's original series *Vinyl*, a character is shown briskly walking down a street in Manhattan at night. As she walks by what appears to be a dumpster or a shed there is a fleeting and unfocused view of some graffiti that was apparently rendered by Plaintiff on that dumpster. The graffiti itself cannot be seen when watching the episode at normal speed, but when the episode is paused and then played, the graffiti appears on the dumpster in the dim background of the nighttime scene for approximately two seconds. For this, Plaintiff has asserted claims for copyright and trademark infringement as well as unfair competition and seeks over $1,500,000.00 in damages.

Plaintiff's copyright claim fails because to the extent HBO used his graffiti at all, the use is clearly *de minimis* and non-actionable, because it amounts to a fair use, and because Plaintiff appears not to have registered the work in question. Plaintiff similarly fails to state a claim for trademark infringement, "federal unfair competition," or analogous claims under state law – because the graffiti is hardly visible, he cannot plausibly allege a likelihood of confusion between his work and *Vinyl*. And, in any event, his claim is barred by the First Amendment. This case should accordingly be dismissed.

## FACTUAL BACKGROUND

Plaintiff Itoffee R. Gayle ("Plaintiff"), who is proceeding in this action *pro se*, is an artist who claims to have painted the graffiti phrase "Art We All One" (the "Graffiti") on what appears be a shed or dumpster in New York City (the "Dumpster"). Am. Compl., pp. 14, 15. Plaintiff

alleges that he owns the trademark to the word mark "Art We All" and the copyright in a number

of works associated with that phrase.  Am. Compl. ¶ 1; Strom Decl., Ex. B.

Defendant HBO produced and distributed the HBO original series *Vinyl*, which depicted

the lives and careers of music producers living in New York City in the 1970s.  Am. Compl. ¶ 2;

Strom Decl., Ex. A.

Plaintiff's claim arises from a scene in the fifth episode of season one of *Vinyl* (the

"Episode") in which Plaintiff claims that the Dumpster, along with the Graffiti, can be seen in

the corner of the screen, "in the background as the actress walks by it in a nighttime scene."  Am.

Compl. ¶ 2.  After HBO was unable to spot the Graffiti in the Episode, Plaintiff's former counsel

provided this screenshot:





Strom Decl., Ex. C.[1]

The scene identified by Plaintiff includes a shot of an actor walking down a New York street at night.  Strom Decl., Ex. A at 46:10; Am. Compl. ¶ 2.  Although the camera remains focused on the actor throughout, the streetscape is visible behind her.  For approximately four seconds, the Dumpster is visible in the background – although it is out of focus, in dim light, and at an angle.  The portion of the Dumpster on which the Graffiti appears is on camera for approximately two seconds of the over 52 minute-long Episode.  The Graffiti is never shown in focus, it is never in the foreground, and it never occupies even a majority of the screen.  *Id.*  As a result of this, Plaintiff pleads, he "feels disrespected as an artist and businessman."  Am. Compl. ¶ 6.

Plaintiff filed his initial four-paragraph Complaint in New York Supreme Court, New York County, on July 13, 2017, claiming copyright and trademark infringement.  Dkt. 1-1.  HBO timely removed to this Court, Dkt. 1, and moved to dismiss the Complaint on August 17.  Dkt. 9.  The Court then gave Plaintiff an opportunity to amend the Complaint in response to HBO's initial motion to dismiss in order to include "additional facts [that] will cure deficiencies identified in the motion to dismiss," noting that "Plaintiff will not be given any further opportunity to amend the complaint to address issues raised by the motion to dismiss."  Dkt. 17.

---

[1] This Court may consider this correspondence because an incomplete version of the demand letter sent by Plaintiff's former counsel to HBO and a black-and-white version of this screenshot are attached to the Amended Complaint. Am. Compl., pp. 13, 16-17; *see Stoner v. Walsh*, 772 F. Supp. 790, 792 (S.D.N.Y. 1991) (considering demand letter and follow-up correspondence on motion dismiss as incorporated by reference in Complaint).  It may also consider the Episode itself, which is incorporated by reference in the Amended Complaint and is central to Plaintiff's claims.  *See Peter F. Gaito Architecture, LLC*, 602 F.3d 57, 64 (2d Cir. 2010) (considering works at issue on motion to dismiss because "in copyright infringement actions, the works themselves supersede and control contrary descriptions of them, including any contrary allegations, conclusions or descriptions of the works contained in the pleadings.")(citation omitted); *Medina v. Dash Films, Inc.*, 15-cv-2551(KBF), 2016 WL 3906714, at *4 (S.D.N.Y. July 14, 2016) (considering defendant's films on motion to dismiss in trademark infringement action because "[t]he work is centrally incorporated into the complaint").

On August 25, Plaintiff filed the Amended Complaint.  In addition to the copyright and trademark infringement claims, the Amended Complaint adds claims for federal unfair competition and "unfair competition and trademark infringement under related state laws."  Am. Compl. ¶ 5.

The Amended Complaint also adds a reference to a video produced by HBO describing the making of *Vinyl* (the "Video") in which members of the production team note the importance of graffiti to creating authentic-looking scenes of 1970s New York and that they hired some graffiti artists to recreate graffiti for the set.  Am. Compl. ¶ 3.  But the Video says nothing about the scene in question, Plaintiff, or the Graffiti, and Plaintiff never alleges that HBO somehow artificially recreated his Graffiti in the Episode.  *See Making Vinyl: Recreating the '70s*, https://www.youtube.com/watch?v=vk8TEHMi4CA&t=254s.  In fact, the Amended Complaint makes it clear that Plaintiff painted the Graffiti in a public place, which simply appeared "in the background as the actress walks by it" in the Episode.  Am. Compl. ¶ 2 and pp. 14-15.

Plaintiff seeks damages in the amount of "$1,500,000 for each act of infringement, statutory & punitive damages, as well as former attorney's fees, travel expenses to and from court, printing fees, in addition to the infliction of emotional distress this entire ordeal has caused."  *Id.* ¶ 6.[2]

---

[2] Plaintiff also listed new additional Defendants in the Amended Complaint – HBO's in-house counsel Steve Sapienza, as well as the undersigned, Rachel Strom and Adam Lazier.  Plaintiff's inclusion appears to be an error, as the Amended Complaint contains no allegations against these additional defendants, and Plaintiff has not issued summonses for them or attempted to serve them.  To the extent that the additional defendants are deemed to be parties to this case, however, the grounds set forth in this Motion are equally applicable to all defendants.  In addition to the reasons set out below, the Amended Complaint should be dismissed against the additional defendants because it contains no allegations against them.  *See, e.g., Dove v. Fordham University*, 56 F. Supp. 2d 330, 335 (S.D.N.Y. 1999) ("It is well-settled that 'where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted.'") (citing cases).

4

## ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  In applying this standard, the Court need not credit conclusory legal allegations or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557); *see also LaFaro v. New York City Cardiothoracic Grp.*, 570 F.3d 471, 475-76 (2d Cir. 2009) ("We are not bound to accept as true legal conclusions couched as factual allegations.").  Where the well-pled facts do not "plausibly give rise to an entitlement to relief," dismissal is appropriate. *Iqbal*, 556 U.S. at 679.

Although a court should "liberally construe" the complaint of a *pro se* Plaintiff, "we still require that he plead facts sufficient to 'state a claim to relief that is plausible on its face.'" *Teichmann v. N.Y.*, 769 F.3d 821, 825 (2d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).  The deficiencies in the Complaint, however, are not simply a matter of pleading.  A simple comparison of the Episode and the Graffiti establish that even a well-pled complaint could not state a claim for any cause of action.  This action should therefore be dismissed.

## I. HBO'S FLEETING "USE" OF THE GRAFFITI CANNOT SUPPORT A COPYRIGHT CLAIM

Because Plaintiff's Graffiti is barely – if at all – noticeable in the Episode, Plaintiff's copyright claim fails for three reasons.  Most importantly, the "use" here was so inconsequential it is a non-infringing *de minimis* use.  Indeed, if the fleeting appearance of the Graffiti– in the far background of a dimly lit scene for about two seconds – is not considered *de minimis,* it is hard

5

to imagine a case where that doctrine would apply.  And, to the extent the Graffiti can be seen at all, HBO's use of it was a transformative fair use, making use of the Graffiti not for its aesthetic or decorative value, but as one small piece in an authentic-looking New York streetscape. Finally, Plaintiff's claim is barred by the fact he has not registered a copyright in the Graffiti.

### A.       This Is a Quintessential Example of Non-Actionable *De Minimis* Use

To prevail on his copyright claim here, Plaintiff must prove that "(1) unauthorized copying of the copyrighted work occurred, and (2) the infringing work is substantially similar." *Gottlieb Dev. LLC v. Paramount Pictures Corp.*, 590 F. Supp. 2d 625, 631 (S.D.N.Y. 2008).  To prove substantial similarity, a plaintiff must show, among other things, "that the amount that was copied is more than de minimis." *Id.*

The *de minimis* doctrine provides that "if the copying is…so 'trivial' as to fall below the quantitative threshold of substantial similarity, the copying is not actionable."  *Id.* at 632; *see also Ringgold v. Black Entm't Television, Inc.*, 126 F.3d 70, 74 (2d Cir. 1997) ("*de minimis* can mean that copying has occurred to such a trivial extent as to fall below the quantitative threshold of substantial similarity, which is always a required element of actionable copying.").  In applying the *de minimis* doctrine to visual works like the Episode, "the observability of the copyrighted work is critical, and courts will consider the length of time the copyrighted work is observable as well as factors such as focus, lighting, camera angles, and prominence." *Gottlieb*, 590 F. Supp. 2d at 632 (citation omitted); *see also Ringgold*, 126 F.3d at 75.  Observability is measured from the perspective of the "average lay observer." *Sandoval v. New Line Cinema Corp.*, 147 F.3d 215, 218 (2d Cir. 1998).

Accordingly, courts have consistently recognized that a defendant's use of fleeting, out-of-focus glimpses of a copyrighted work in the background of a show is *de minimis* and not

actionable.  And, they have done so at the motion to dismiss stage.  See *Gottlieb*, 590 F. Supp. 2d at 632.

The Second Circuit's decision in *Sandoval* is directly on point here.  In *Sandoval*, a photographer sued the producer of the film *Seven* over a scene where ten of his photographs appeared out-of-focus in the background of a scene in eleven different camera shots for a total of about 35 seconds.  147 F.3d at 216.  The Court held that the defendant's use was *de minimis*, because the photographs were "not displayed with sufficient detail for the average lay observer to identify even the subject matter of the photographs, much less the style used in creating them.  The photographs are displayed in poor lighting and at great distance.  Moreover, they are out of focus and displayed only briefly."  *Id.* at 218.  "In short," the Court held, this was a case where "a visual work, though selected by production staff for thematic relevance, or at least for its decorative value, might ultimately be filmed at such distance and so out of focus that a typical program viewer would not discern any decorative effect that the work of art contributes to the set."  *Id.*; *cf. Ringgold*, 126 F.3d at 75-77 (use of clearly visible poster that, at times, used majority of screen "with sufficient observable detail" for a total of 26 seconds not *de minimis*).

Similarly, the plaintiff in *Gottlieb v. Paramount Pictures Corp.* claimed that the defendant infringed his copyright and trademark in a pinball machine by including the machine in a set for the film *What Women Want*.  Although the plaintiff alleged that the machine appeared in the film for about three minutes, the court dismissed the copyright claim, holding that the defendant's use of the machine "was *de minimis* as a matter of law."  590 F. Supp. 2d at 630-32.  The court noted that the machine "is always in the background; it is never seen in the foreground.  It never appears by itself or in a close-up.  It is never mentioned and plays no role in the plot.  It is almost always partially obscured . . . and is fully visible for only a few seconds during the

7

whole scene . . . the 'average lay observer would not be able to discern any distinctive elements of Gottlieb's Designs.'" *Id.* at 632-33.

If anything, the case for the *de minimis* defense is even stronger here than in either of those cases. The Graffiti only appears onscreen at all for about two seconds – far less than the thirty-five seconds in *Sandoval*, or the total of *three minutes* held to be *de minimis* in *Gottlieb*. And the "observability" of the Graffiti – partially obscured, out of focus, in low light, and deep in the background – is so poor that the average lay observer would never recognize "any distinctive elements" of Plaintiff's design on the Dumpster, if he or she were somehow able to spot the Graffiti at all. In short, a visual work could scarcely be less observable than the Graffiti here. This is a textbook case for application of the *de minimis* doctrine.

Plaintiff's amendment to his Complaint does not address the crux of the *de minimis* issue – the fact that the Graffiti is simply not visible to the ordinary viewer of the Episode. Plaintiff instead refers to the Video as proof that HBO found graffiti to be instrumental for *Vinyl*'s set. Am. Compl. ¶ 3. But even if this vague reference were enough to plausibly allege that HBO intentionally included the Graffiti in the Episode, it is irrelevant.[3] *Gottlieb*, for instance, found a fleeting use of plaintiff's copyrighted work to be *de minimis* even though "undoubtedly the [copyrighted work] was chosen by the production staff because it fit in with the 'sporty theme' of the background in the scene.'" 590 F. Supp. 2d at 634. Instead, as *Sandoval* and *Gottlieb* demonstrate, *de minimis* turns on the observability and prominence of the copyrighted work, not whether the defendant made a conscious choice to include the work. Thus, even assuming that HBO chose to include the Graffiti in the background of the Episode, HBO's use is protected by

---

[3] Any such allegation is contradicted by the claim that the actress in the Episode merely "walked by it" on the street. Am. Compl. ¶ 2. *See also id.*, pp. 14-15 (showing that the Graffiti was placed on a dumpster on the street).

the *de minimis* doctrine because the Graffiti is hardly – if at all – observable.  Because any use of

the Graffiti in the Episode is *de minimis*, Plaintiff's copyright claim must be dismissed.

**B.     Even if This Court Does Not Find The Use to Be *De Minimis*, HBO's Use of Plaintiff's Work was a Fair Use**

Even if HBO's use of the Graffiti is not *de minimis*, those fleeting shots are protected as a

fair use.[4]  While the Copyright Act grants copyright owners a bundle of certain exclusive rights,

including the right "to reproduce the copyrighted work in copies," 17 U.S.C. § 106, "the fair use

of a copyrighted work . . . for purposes such as criticism, comment, [or] news reporting . . . is not

an infringement of copyright."  17 U.S.C. § 107.  Because "[t]he primary objective of copyright

is not to reward the labor of authors, but '[t]o promote the Progress of Science and useful Arts,'"

the copyright laws assure "authors the right to their original expression, *but encourages others to

build freely upon the ideas and information conveyed by a work*."  *Feist Publ'ns, Inc. v. Rural

Tel. Serv. Co.*, 499 U.S. 340, 349-50 (1991) (emphasis added) (quoting U.S. Const. Art. I, § 8, cl.

8 and citing *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 556-57 (1985)).

Section 107 sets forth four non-exclusive factors that courts must consider in determining

whether a particular use of a copyrighted work is a fair use:

(1)     the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2)     the nature of the copyrighted work;

(3)     the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4)     the effect of the use upon the potential market for or value of the copyrighted work.

---

[4] A court should not conduct a fair use analysis until first determining that the alleged infringement is not *de minimis*.  *Sandoval*, 147 F.3d at 217.

17 U.S.C. § 107.  These four factors must be considered together, and none may be "treated in isolation."  *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578 (1994).

In the Second Circuit, where fair use can be established on the face of a complaint or by comparing the works at issue side-by-side, dismissal pursuant to Rule 12(b)(6) is appropriate.  *TCA Television Corp. v. McCollum*, 839 F.3d 168, 178 (2d Cir. 2016).  Here, the Court is well-equipped to conduct a fair use analysis at the pleading stage, as the Court can easily compare the images of the Dumpster in *Vinyl* with Plaintiff's Graffiti.  Applying the fair use factors compels a finding that, as a matter of law, the challenged use is a fair use that cannot give rise to an infringement claim.

### 1.     The Purpose and Character of HBO's Use

The first fair use factor weighs decidedly in HBO's favor because HBO made a transformative use of the Graffiti.  This factor requires the Court to examine the "purpose and character of the use."  17 U.S.C. § 107(1).  The primary focus of the first fair use factor is "whether and to what extent the new work is 'transformative,'" *Campbell*, 510 U.S. at 579 (citation omitted), meaning whether the new use "adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message."  *Id.*  As the *Campbell* Court observed, "transformative works . . . lie at the heart of the fair use doctrine's guarantee of breathing space . . . ."  *Id.*[5]

---

[5] It is well-established in the Second Circuit that a defendant's status as a for-profit enterprise is not a dispositive factor in evaluating the purpose and character of the defendant's use.  *See, e.g.*, *Bill Graham Archives v. Dorling Kindersley Ltd.,* 448 F.3d 605, 612 (2d Cir. 2006) (biography of Grateful Dead did not seek to exploit the plaintiff's images' expressive value for commercial gain); *New Era Publ'ns Int'l, ApS v. Carol Publ'g Grp.*, 904 F.2d 152, 156 (2d Cir. 1990) ("To be sure, the author and appellant want to make a profit in publishing the book.  But the author's use of material 'to enrich' his biography is protected fair use, 'notwithstanding that he and his publisher anticipate profits.'" (citation omitted)); *Maxtone-Graham v. Burtchaell*, 803 F.2d 1253, 1262 (2d Cir. 1986) (Section 107(1) does not "requir[e] . . . a clear-cut choice between two polar characterizations, 'commercial' and 'non-profit'"; "[w]ere that the case, fair use would be virtually obliterated, for '[a]ll publications presumably are operated for profit.'").

Here, this factor strongly supports a finding of fair use. *Sandoval* is once again particularly instructive. Before that case reached the Second Circuit, the District Court in *Sandoval* resolved the case in the defendant's favor on fair use grounds.[6] The court held that the film's use of the photographs was transformative, because it "used the visual images created in plaintiff's work in furtherance of a distinct visual aesthetic and overall mood." *Sandoval v. New Line Cinema*, 973 F. Supp. 409, 413 (S.D.N.Y. 1997). *See also Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1176 (9th Cir. 2013) (band's use of copyrighted street art in video backdrop for concert set was transformative because it "used the original as 'raw material'" and, although the original was prominently featured, "it remains only a component of what is essentially a street-art focused music video about religion.").

To the extent the Graffiti was visible at all in the Episode, that perfectly describes HBO's use of it – HBO used the Graffiti not for its decorative and aesthetic appeal (which viewers could not even see because of the poor light and lack of focus), but instead gave it a "further purpose" as an element of a realistic New York streetscape.

The facts here tip even further in favor of fair use because, as Plaintiff himself notes, the Graffiti appeared in the Episode only by virtue of HBO's decision to have a character "walk[] by it." Am. Compl. ¶ 2. This scenario is no different than what happened in *Italian Book Corp. v. American Broadcasting Cos.*, 458 F. Supp. 65 (S.D.N.Y. 1978). In that case, an ABC television news crew recorded video of New York City's San Gennaro festival, including a portion of a parade consisting of a band on a float playing plaintiff's copyrighted music, for use in a news report about the festival. *Id*. at 67. Recognizing that "ABC's employees had no advance knowledge that a band would come along on a float playing this particular song," the court found

---

[6] The Second Circuit affirmed this decision on *de minimis* grounds, as discussed above, without comment on the merits of the fair use issue.

11

that the fortuitous use of the music in ABC's news reporting was a fair use. *Id.* at 68. *See also Threshold Media v. Relativity Media, LLC,* 166 F. Supp. 3d 1011, 1026 (C.D. Cal 2013) (noting that "[F]ilmmakers recording real-life events 'almost invariably copy publicly known, expressive works.'") (citation omitted). Just as in *Italian Book*, to the extent the Graffiti is used at all in the Episode, it is nothing more than an incidental part of the real-life streetscape – something that resulted because, as Plaintiff pleads, a character "walks by it."

*Italian Book*'s recognition that fair use protects incidental recordings of copyrighted works serves an important purpose. If a producer were required to find and obtain a license from every graffiti or street artist whose work appeared in the background of its footage, filming on location in a city like New York would be daunting. Copyright law simply does not require producers like HBO to erase street art and other background details when shooting on location. Thus, this factor tips heavily in HBO's favor.

### 2.    The Nature of the Copyrighted Work

The second factor considers "the nature of the copyrighted work." 17 U.S.C. § 107. Even assuming that Plaintiff's Graffiti of the words "Art We All One" is a creative work,[7] courts have found this factor to be of little significance in cases involving fleeting, background uses of copyrighted work. *See, e.g., Amsinck v. Columbia Pictures Industries, Inc.*, 862 F. Supp. 1044, 1050 (S.D.N.Y. 1994); *Threshold Media,* 166 F. Supp. 3d at 1026; *Higgins v. Detroit Pub. Television Foundation*, 4 F. Supp. 2d 701, 707 (E.D. Mich. 1998). This factor should therefore not weigh heavily in the Court's analysis here.

---

[7] This Court has, however, recognized that short phrases and slogans "do not exhibit the minimal creativity required for [copyright] protection." *Bell v. Blaze Magazine*, No. 99 Civ. 12342(RCC), 2001 WL 262718, at *2 (S.D.N.Y. Mar. 16, 2001) (citing *Arica Institute, Inc. v. Palmer*, 970 F.2d 1067, 1072 (2d Cir. 1992)).

### 3.      The Amount and Substantiality of HBO's Use

The third factor – the amount and substantiality of the portion of the copyrighted material used in relation to the copyrighted work as a whole – also favors a finding of fair use.  In applying this factor, "the extent of permissible copying varies with the purpose and character of the use."  *Campbell*, 510 U.S. at 586-87.

Here too, the observability of the copyrighted work is an important factor.  In *Sandoval,* for instance, the District Court held that the defendant's use of the plaintiff's complete photographs in the background of *Seven* did not preclude a finding of fair use because the photographs were only recognizable "after careful scrutiny and repeated viewings," and "[t]his fleeting and obscured use of plaintiff's work did not and cannot capture the essence or value of the plaintiff's work."  973 F. Supp. at 413; *Amsinck*, 862 F. Supp. at 1050 (defendant's use of copyrighted mobile as film prop was fair use because "defendants rightly point out that the Mobile is seen for only a few seconds at a time, and the artwork itself is visible for less than 96 seconds.").

HBO used no more of the Graffiti than was necessary to create its realistic New York street scene.  And, as in *Sandoval*, the fleeting, barely-recognizable glimpse of the Graffiti – reduced from its full size to the corner of a viewer's screen – does not capture the "essence" or "heart" of Plaintiff's work.  The third factor therefore weighs in favor of fair use.

### 4.      The Effect of HBO's Use on the Graffiti's Market Value

The fourth factor considers "the effect of the use upon the potential mark for or value of the copyrighted work."  17 U.S.C. § 107(a).  This consideration decisively favors fair use here.

Again *Sandoval* is instructive.  There, the court explained that the fourth factor "weighs decidedly in defendants' favor" because "the defendant's fleeting and obscured use of the Photographs as part of the background to a movie scene cannot be considered a substitute for the

13

Photographs by any stretch of the imagination.  Sandoval's work is virtually undetectable in the scene at issue.  Thus, the value of and market potential for his work is in no way usurped, since the public is not even aware after viewing *Seven* that they have had a glimpse of Sandoval's work."  973 F. Supp. at 414.  Any suggestion that a potential customer would prefer a shrunken, grainy, dark, and out-of-focus copy of Plaintiff's work to the real thing should similarly be rejected.

At bottom, the fair use defense ensures that Plaintiff may not simply install his artwork on property on a busy street – property he probably does not own – and then demand a license fee from everyone who happens to capture a glimpse of that work on film as they "walk[] by it". Am. Compl. ¶ 2.  For all of these reasons, HBO's use of the Graffiti is a clear-cut fair use under Section 107, and Plaintiff's copyright infringement claim should be dismissed as a matter of law.

## C.     Plaintiff Has Not Registered a Copyright in the Graffiti

Plaintiff's copyright claim also fails because he has not registered a copyright in the Graffiti.  The Copyright Act provides that a plaintiff may not sue for copyright infringement until he has registered his copyright, 17 U.S.C. § 411, and "[c]ourts in this Circuit have consistently made clear that a plaintiff's failure to register or preregister a copyright merits dismissal of an infringement claim."  *Membler.com LLC v. Barber*, No. 12-cv-4941(JS)(GRB), 2013 WL 5348546, at *4 (E.D.N.Y. Sept. 23, 2013); *see also Wagstaff-El v. Carlton Press Co.*, 913 F.2d 56, 58 (2d Cir. 1990) (affirming dismissal of copyright infringement claim for failure to show a registered copyright).

Plaintiff alleges in the Amended Complaint that he holds a registered copyright in the Graffiti, Am. Compl. ¶ 1, but – as HBO pointed out in its motion to dismiss the original Complaint, Dkt. 10, p. 4 n.2 – this allegation is contradicted by the demand letter his former

counsel sent to HBO.  Strom Decl., Ex. B (attaching demand letter with all enclosures).[8]

According to the demand letter, Plaintiff holds a registered copyright "in the works attached hereto."  Strom Decl., Ex. B.  Those works *do not* include the Graffiti.  *Id.*; *see, e.g., Matusovsky v. Merrill Lynch*, 186 F. Supp.2d 397, 400 (S.D.N.Y. 2002) ("If a plaintiff's allegations are contradicted by [evidence attached to the complaint or incorporated by reference], those allegations are insufficient to defeat a motion to dismiss").[9]   And, a search of U.S. copyright office's online database confirms that Plaintiff holds no other copyrights.  Strom Decl. ¶ 5.  Thus, it is clear from public records of which this Court can take judicial notice that Plaintiff does not have a registered copyright in the Graffiti at issue here, and Plaintiff's copyright claim must be dismissed.

## II.    PLAINTIFF'S TRADEMARK INFRINGEMENT AND "FEDERAL UNFAIR COMPETITION" CLAIMS FAIL AS A MATTER OF LAW

Plaintiff's trademark infringement and "federal unfair competition" claims are no more viable than his copyright infringement claim.  These claims are doomed not only because Plaintiff cannot – and has not – plausibly alleged any consumer confusion between his mark for the words "Art We All One" and the Episode, but also by long-standing Second Circuit

---

[8] Plaintiff attached an incomplete copy of this letter to the Amended Complaint, which did not include its enclosures.  Am. Compl., pp. 16-17.  A full version is attached as Exhibit B to the Strom Decl.  Because the incomplete version of the letter was attached to the Amended Complaint, the complete version may be considered on this Motion.  *See Watson v. Bretz & Coven, LLP*, 2013 WL 12082741, at *1 n.2 (S.D.N.Y. Mar. 18, 2013).

[9] Although the letter does attach photographs of *other* examples of graffiti involving the phrases "Art We All" or "Art We All One", that does not establish Plaintiff's registration of the specific Graffiti at issue here because the phrases themselves are not copyrightable – "it is axiomatic that works, short phrases, titles, and slogans are not subject to copyright, even if they can be trademarked."  *Moody v. Morris*, 608 F. Supp.2d 575, 579 (S.D.N.Y. 2009).

15

precedent strictly limiting the application of the Lanham Act to artistic works so as to ensure there is no conflict with the First Amendment.[10]

### A.      Plaintiff Fails to Plausibly Allege a Likelihood of Confusion

In order to prevail on a claim for trademark infringement, "a plaintiff must demonstrate that it has a valid mark entitled to protection and that the defendant's use of it is likely to cause confusion."  *Time,* 173 F.3d at 117; *see also, e.g., Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 826 F.3d 27, 37 (2d Cir. 2016).  Even assuming that Plaintiff has a valid mark entitled to protection here, his claim must be dismissed because he cannot possibly satisfy the confusion requirement.[11]

Confusion "turns on whether ordinary consumers are likely to be misled or confused as to the source of the product in question because of the entrance in the marketplace of the junior user's mark." *Guthrie Healthcare*, 826 F.3d at 37 (citations and internal punctuation omitted).  Mere speculation is not enough: a finding of infringement requires "a probability of confusion, not a mere possibility," in which "a large number of purchasers likely will be confused as to the source of the goods in question."  *Streetwise Maps, Inc. v. Vandam*, 159 F.3d 739, 743 (2d Cir. 1998); *see also Guthrie Healthcare*, 826 F.3d at 37.

---

[10] Plaintiff pleads separate claims for "trademark infringement" under section 32(a) of the Lanham Act, 15 U.S.C. § 1114(a), and "federal unfair competition" under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  Am. Compl. ¶ 5(ii) and (iii).  Claims under both provisions (which respectively apply to registered and unregistered marks) are, however, considered claims for trademark infringement, and "the same analysis applies to both provisions."  *Coach, Inc. v. Horizon Trading USA Inc.*, 908 F. Supp.2d 426, 433 (S.D.N.Y. 2012); *see also Time, Inc. v. Petersen Pul'g Co.*, 173 F.3d 113, 117 (2d Cir. 1999).  Accordingly, HBO will address both claims at once.

[11] Again, for the purpose of this motion only, HBO will assume that Plaintiff has a valid trademark for the words "Art We All One" in his artwork.  Courts, however, recognize that trademark protection of a slogan is not appropriate where that slogan is not used to "differentiate or identify the origin of…goods or services," but instead "*is the creative work itself.*"  *American Express Co. v. Goetz*, 515 F.3d 156, 159-161 (2d Cir. 2008); *compare* Am. Compl. ¶ 4 (pleading that "'Art We All' is a registered trademark under the category of providing retail services including works of art.").

For a trademark infringement claim to survive a motion to dismiss, *Iqbal* requires that a plaintiff plead a factual basis upon which a court could reasonably infer a likelihood of confusion.  *See, e.g., Ahmed v. GEO USA LLC*, No. 14-cv-7486(JMF), 2015 WL 1408895 (S.D.N.Y. Mar. 27, 2015), at *3 ("[B]road statements – devoid of any factual detail – are plainly insufficient as a matter of law" to survive a motion to dismiss for failure to plausibly allege confusion) (citing cases); *Gottlieb*, 590 F. Supp. at 635 (granting motion to dismiss trademark infringement claim on confusion grounds where allegation of confusion "is simply not plausible.").

There is no plausible basis on which a court could infer that the mere presence of the Graffiti in an episode of *Vinyl* would lead consumers to believe that Plaintiff sponsors or is otherwise associated with the Episode or with HBO.  Courts have, in fact, consistently and squarely rejected this argument, recognizing that viewers "are sophisticated enough to know that the mere presence of a [trade mark] in a film, especially one that is briefly and intermittently shown, does not indicate that the brand sponsored the movie."  *Louis Vuitton Malletier S.A. v. Warner Bros. Entertainment Inc.* 868 F. Supp. 2d 172, 184 n. 19 (S.D.N.Y. 2012); *see also Sherwood 48 Assocs. v. Sony Corp. of Amer.,*, 213 F. Supp. 2d 376, 377 (S.D.N.Y. 2002), *aff'd in part, vacated in part on other grounds,* 76 F. App'x 389 (2d Cir. 2003) (no likelihood of confusion from digital alteration of plaintiff's buildings appearing in background of film scene); *Fortres Grand Corp. v. Warner Bros. Entm't Inc.*, 947 F. Supp. 2d 922, 930-31 (N.D. Ind. 2013) ("simply is no plausible claim" of confusion arising out of use of computer software mark in film); *Caterpillar Inc. v. Walt Disney Co.*, 287 F. Supp. 2d 913, 919-20 (C.D. Ill. 2003) (no confusion arising out of use of plaintiff's vehicle in film).

*Gottlieb* is once again directly on point.  The plaintiff in that case also alleged that the defendant's use of its trademark on its pinball machine in the background of the film set of Paramount's *What Women Want* constituted trademark infringement.  On a motion to dismiss, however, the court found that the plaintiff's "assertion that the appearance of its trademark in the Film would confuse ordinarily prudent consumers as to the sponsorship or affiliation of its pinball machines is simply not plausible."  *Gottlieb*, 590 F. Supp. 2d at 635.  In so holding the court reasoned that "[o]n a viewing of the Film, it would be difficult for even a keen observer to pick out Gottlieb's trademark, as it appears in the background of the scene. The trademark is visible at various places on the pinball machine, but it occupies only a minute fraction the frame for three segments lasting approximately three seconds each."  *Id.* at 634-35.  The Court also noted that "the pinball machine is merely part of the background, together with another pinball machine, a foosball table, and other furniture and furnishings."  *Id.* at 635.  Thus, the court held that "no viewer of the Film would consider whether Paramount sponsored the pinball machine or Gottlieb sponsored the Film."  *Id.*

Here, just as in *Gottlieb*, Plaintiff cannot plausibly allege consumer confusion.  Because the Graffiti is barely visible – even if you freeze the frame right on it – an ordinary viewer (much less "a large number of consumers") would never even know the Graffiti appears in the Episode at all.  But even a viewer who managed to spot the Graffiti would have no reason to believe that there was any association between Plaintiff and HBO.  The show never focuses on the Graffiti and certainly gives it no special prominence – in fact, the Graffiti appears in exactly the same way as any other element of the background streetscape in that scene, including other graffiti in the background as well as other street and store signs.  In these circumstances, no different than those in *Gottlieb*, no reasonable viewer of the Episode would believe that Plaintiff sponsored

18

*Vinyl* or that HBO sponsored Plaintiff.  Any allegation of confusion is not plausible, and Plaintiff's trademark claims fail as a matter of law.

## B.   Plaintiff's Trademark Claims are Barred by the First Amendment

If that were not sufficient, Plaintiff's trademark claims should also be dismissed because they are barred by the First Amendment.  The Second Circuit has recognized that "[b]ecause overextension of Lanham Act restrictions . . . might intrude on First Amendment values, we must construe the Act narrowly to avoid such a conflict."  *Rogers v. Grimaldi*, 875 F.2d 994, 998 (2d Cir. 1989).  Since *Rogers*, a case dealing with the use of Ginger Rogers's name in a film title, courts in the Second Circuit have recognized that "the Lanham Act is inapplicable to 'artistic works' as long as the defendant's use of the mark is (1) 'artistically relevant' to the work and (2) not 'explicitly misleading' as to the source or content of the work."  *See Louis Vuitton*, 868 F. Supp. 2d at 177 (citing *Rogers*, 875 F.2d at 999, and *Twin Peaks Prods, Inc. v. Publ'ns Int'l Ltd.*, 996 F.2d 1366, 1379 (2d Cir. 1993)); *see also Cliffs Notes, Inc. v. Bantam Doubleday Dell Publ'g Grp.*, 886 F.2d 490, 495 (2d Cir. 1989) (holding that "the *Rogers* balancing approach is generally applicable to Lanham Act claims against works of artistic expression.").  Courts in this district have not hesitated to apply the *Rogers* framework at the motion to dismiss stage.  *See Medina*, 2016 WL 3906714, at *5 ("[c]ontrary to plaintiff's arguments, determination of these standards is not premature at this stage," and granting motion to dismiss); *Louis Vuitton*, 868 F. Supp. 2d at 183 (rejecting plaintiff's argument that "the *Rogers* test cannot be assessed on a motion to dismiss" and dismissing case).

As an initial matter, it is clear that the Episode qualifies as an "artistic work" to which the *Rogers* framework applies.  *Rogers* itself was about a film, and courts have regularly applied the test to films, television programs, and other visual works, including those made for profit.  *See, e.g., Medina,* 2016 WL 3906714, at *4-*5 (short film series); *Louis Vuitton*, 868 F. Supp. 2d at

19

177 (film *The Hangover: Part II*); *Sherwood 48 Assocs.,* 213 F. Supp. 2d at 377 (film *Spider-Man*); *Twentieth Century Fox Television v. Empire Distrib. Inc.*, 161 F. Supp. 3d 902, 907 (C.D. Cal. 2016) (television series *Empire*).

Next, the Graffiti is artistically relevant to the Episode. "The threshold for 'artistic relevance' is purposely low and will be satisfied unless the use 'has *no* artistic relevance to the underlying work *whatsoever*.'" *Louis Vuitton*, 868 F. Supp. 2d at 178 (quoting *Rogers*, 875 F.2d at 999) (emphasis in original); *see also E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1100 (9th Cir. 2008) ("[T]he level of relevance merely must be above zero."). The purpose of the artistic relevance requirement is simply to ensure that the defendant did not include the mark "just to exploit [its] publicity value." *Rogers*, 875 F.2d at 1001; *see also Louis Vuitton*, 868 F. Supp.2d at 178.

Under this standard, courts have repeatedly recognized that producers are entitled to use trademarks as background details to create a realistic atmosphere. *See E.S.S.,* 547 F.3d 1095 (applying *Rogers* framework and rejecting claim based on video game that included a simulated version of East Los Angeles that players could explore, which included a strip club called "Pig Pen" as the strip club's name was artistically relevant because it allowed the game to create the "look and feel" of East Los Angeles); *see also Sherwood 48 Assocs.,* 213 F. Supp. 2d at 377 (digital alteration of plaintiff's buildings in film's Times Square scene "serv[ed] the theatrically relevant purpose of orienting the viewer to the location"); *Univ. of Alabama Bd. of Trustees v. New Life Art, Inc.*, 683 F.3d 1266, 1278-79 (11th Cir. 2012) (college football uniforms artistically relevant to paintings of college football scenes "because the uniforms' colors and designs are needed for a realistic portrayal of famous scenes from Alabama football history."); *VIRAG, S.R.L. v. Sony Computer Entm't Am. LLC*, No. 3:15-cv-012729-LB, 2015 WL 5000102,

at *11 (N.D. Cal. Aug. 21, 2015)  (use of mark as part of background trackside advertisement in auto-racing video game artistically relevant because it "allow[ed] players to drive on realistic simulations of European race tracks.").

That is exactly what happened here.  In the same way the defendant in *E.S.S.* used the plaintiff's trademark to create the "look and feel" of East Los Angeles, Plaintiff actually pleads that the Graffiti served the "purpose of portraying an unsanitized version of 1970s New York City…so that [HBO's] series [seemed] more authentic to viewers."  Am. Compl. ¶ 4.  HBO therefore easily satisfies the artistic relevance prong of the *Rogers* test.

And HBO did not "explicitly mislead" viewers as to the source or content of the Episode. The relevant question at the second stage of the *Rogers* test is "whether the defendant's use of the mark is misleading in the sense that it induces members of the public to believe the work was prepared or otherwise authorized by the plaintiff."  *Louis Vuitton*, 868 F. Supp. 2d at 179; *see also Twin Peaks*, 996 F.2d at 1379 ("The question then is whether the title is misleading in the sense that it induces members of the public to believe the Book was prepared or otherwise authorized by TPP."); *E.S.S.*, 547 F.3d at 1100 ("The relevant question . . . is whether the Game would confuse its players into thinking that the Play Pen is somehow behind the Pig Pen or that it sponsors [the game].").  Although this determination is based on the same considerations as the ordinary likelihood-of-confusion analysis, "the finding of likelihood of confusion must be particularly compelling to outweigh the First Amendment interest recognized in *Rogers*."  *Twin Peaks*, 996 F.2d at 1379; *see also Louis Vuitton*, 868 F. Supp.2d at 181, 184 n. 19 ("Even if the court assumes, *arguendo*, that Louis Vuitton has stated a cognizable claim of confusion, its claim would fail anyway" under the First Amendment," because "*Rogers* teaches that mark owners must accept 'some' confusion when outweighed by free speech interests.").

21

As discussed above, there is simply no plausible likelihood of confusion here.  But even if Plaintiff were somehow able to plead enough of a likelihood of confusion to survive a motion to dismiss in an ordinary trademark case, he certainly cannot meet the First Amendment's heightened standard of a "particularly compelling" likelihood.  Plaintiff's trademark claims are accordingly barred by the First Amendment, and they should be dismissed.

### III.    PLAINTIFF'S STATE LAW CLAIMS ALSO FAIL

Finally, Plaintiff's claims for "unfair competition and trademark infringement under related state laws" fail for the same reasons as his federal trademark infringement claims.[12]  Like federal trademark claims, New York trademark and unfair competition claims require a likelihood of confusion, so those claims both fail here because Plaintiff cannot plausibly allege any confusion.  *See, e.g., Coach*, 908 F.Supp.2d at 435 ("The standards for trademark infringement under New York common law are essentially the same as under the Lanham Act") (internal punctuation omitted); *Sly Magazine v. Weider Publications L.L.C.*, 346 F. App'x 721, 723 (2d Cir. 2009) (New York unfair competition claim requires "either actual confusion or a likelihood of confusion").  And because "[t]he same First Amendment considerations that limit a cause of action under the Lanham Act apply also to a cause of action under New York law," *Medina*, 2016 WL 3906714, at *4, the *Rogers* analysis bars Plaintiff's state law claims as well.

### <u>CONCLUSION</u>

For all of the foregoing reasons, HBO respectfully requests that the Complaint be dismissed in its entirety with prejudice.

---

[12] As an initial matter, Plaintiff's state law claims should be dismissed because he has failed to identify the state laws he claims HBO violated.  These claims therefore do not comply with the basic pleading requirements of Fed. R. Civ. Pro. 8.  *See In re Sept. 11 Property Damage and Business Loss Litig.*, 468 F. Supp. 2d 508, 522-23 (S.D.N.Y. 2006) (dismissing negligence per se claim for failure to identify specific state statute alleged to have been violated).

DATED:  September 15, 2017                    Respectfully submitted,

                                             DAVIS WRIGHT TREMAINE LLP

                        By:  */s/ Rachel F. Strom*
                             Rachel F. Strom
                             Adam Lazier
                             1251 Avenue of the Americas, 21st Floor
                             New York, New York  10020
                             Phone:  (212) 489-8230
                             Fax:  (212) 489-8340
                             rachelstrom@dwt.com
                             *Counsel for Defendants*