UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

ITOFFEE R. GAYLE,

                                 Plaintiff,

                   -v-

HOME BOX OFFICE, INC.,

                               Defendant.

------------------------------------------------------------------------X

:
:
:
:
:
:
:
:
:
:
:
:

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _05/01/2018_

17-CV-5867 (JMF)

<u>MEMORANDUM OPINION</u>
<u>AND ORDER</u>

JESSE M. FURMAN, United States District Judge:

      Plaintiff Itoffee R. Gayle, proceeding *pro se*, brings this action against Home Box Office, Inc. ("HBO") alleging copyright and trademark infringement.  Gayle's claims derive from the brief depiction of graffiti in the background of one scene in an episode of the HBO television series *Vinyl*.  (Docket No. 19 ("Am. Compl."), at ¶ 1).  In the scene, a woman is shown walking down a New York City street and passing a dumpster tagged with graffiti stating "art we all" that Gayle claims is his intellectual property.  (*Id.* ¶¶ 1-2).  Gayle alleges that HBO depicted the graffiti "without permission, compensation, or attribution" and thus infringed his copyright and trademark rights.  (*Id.* ¶ 1).  He contends that HBO's infringement was "calculated & coordinated" and occurred without the company's ever "attempt[ing] to contact [him], hire [him] or pay the licensing fee(s) to [him]."  (*Id.* ¶¶ 2-3).  Gayle also maintains that HBO "exploited & capitalized" on the "brand name recognition" of his trademark "art we all" in order to make their television show seem "more authentic to viewers."  (*Id.* ¶ 4).  On the basis of these allegations, he brings claims of copyright infringement; unfair competition under the Lanham Act, 15 U.S.C.

§ 1125(a); and unspecified "unfair competition & trademark infringement under related state laws." (Am. Compl. ¶ 5). He seeks $1,500,000 plus fees. (*Id.* ¶ 7).

HBO now moves, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Gayle's claims. When reviewing a motion to dismiss, a court "must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009) (internal quotation marks omitted). To survive such a motion, however, the plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556); *see Twombly,* 550 U.S. at 555 (noting that a complaint that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do"). Where, as here, a plaintiff proceeds *pro se*, his pleadings "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted). "Nonetheless, a *pro se* litigant must still state a plausible claim for relief. Put another way, the Court's duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it." *Thomas v. N.Y.C. Dep't of Educ.*, No. 15-CV-8934 (JMF), 2016 WL 4544066, at *2 (S.D.N.Y. Aug. 31, 2016) (internal quotation marks, citation, and alterations omitted).

To prevail on his claim of copyright infringement, Gayle "must prove that (1) unauthorized copying of the copyrighted work occurred, and (2) the infringing work is substantially similar." *Gottlieb Dev. LLC v. Paramount Pictures Corp.*, 590 F. Supp. 2d 625, 631 (S.D.N.Y. 2008) (citing *Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*,

338 F.3d 127, 131 (2d Cir. 2003)).  Significantly, demonstrating substantial similarity requires showing both that work copied was "protected expression" and "that the amount that was copied is more than *de minimis*." *Tufenkian*, 338 F.3d at 131 (internal quotation marks omitted) .  In the copyright arena, *de minimis* can "mean[] what it means in most legal contexts: a technical violation of a right so trivial that the law will not impose legal consequences," or it can mean "that copying has occurred to such a trivial extent as to fall below the quantitative threshold of substantial similarity, which is always a required element of actionable copying." *Ringgold v. Black Entm't Television, Inc.*, 126 F.3d 70, 74 (2d Cir. 1997).  In analyzing similarity, courts assess "the extent to which the copyrighted work is copied in the allegedly infringing work," with a work's "observability" being paramount. *Gottlieb*, 590 F. Supp. 2d at 632.  Observability turns on "the length of time the copyrighted work is observable as well as factors such as focus, lighting, camera angles, and prominence." *Id.* (citing *Sandoval v. New Line Cinema Corp.*, 147 F.3d 215, 217 (2d Cir. 1998); *Ringgold*, 126 F.3d at 75)).  The assessment is to be made from the viewpoint of an "average lay observer." *Sandoval*, 147 F.3d at 218.

To succeed in a Lanham Act suit for unfair competition or trademark infringement, "a plaintiff has two obstacles to overcome: the plaintiff must prove that its mark is entitled to protection and, even more important, that the defendant's use of its own mark will likely cause confusion with plaintiff's mark." *Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 381 (2d Cir. 2005) (quoting *Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072, 1074 (2d Cir. 1993)); *see* 15 U.S.C. §§ 1114, 1125(a)(1)(A); *see also Fed. Express Corp. v. Fed. Espresso, Inc.*, 201 F.3d 168, 174 (2d Cir. 2000).  To prevail in such an action, a plaintiff must show "'a probability of confusion, not a mere possibility,' affecting 'numerous ordinary prudent purchasers.'" *Star Indus., Inc.*, 412 F.3d at 383 (quoting *Gruner + Jahr*, 991 F.2d at 1077).

"Likelihood of confusion includes confusion of any kind, including confusion as to source, sponsorship, affiliation, connection, or identification." *Id.* (quoting *Guinness United Distillers & Vintners B.V. v. Anheuser-Bush, Inc.*, 64 U.S.P.Q.2d 1039, 1041 (S.D.N.Y. 2002)).  But to state a "cognizable claim in trademark cases, the plaintiff must raise 'a serious question' as to the likelihood of confusion." *Gottlieb*, 590 F. Supp. 2d at 634 (quoting *Am. Cyanamid v. Campagna per le Farmacie in Italia, S.P.A.*, 847 F.2d 53, 55 (2d Cir. 1988)).  Thus, where "it would be difficult for even a keen observer to pick out" the allegedly infringed mark, a plaintiff cannot plausibly establish that "ordinarily prudent consumers" would be confused "as to the sponsorship or affiliation" and his trademark claims would fall short. *Id.* at 634-35.

Then-District Judge Chin's decision in *Gottlieb* provides a helpful illustration of how these principles apply to claims of the sort at issue here.  In that case, the plaintiff claimed that the defendant had infringed his copyright and trademark in a pinball machine by depicting it in the movie *What Women Want* starring Mel Gibson.  Judge Chin dismissed the copyright claim on the ground that the defendant's use of the pinball machine "was *de minimis* as a matter of law." 590 F. Supp. 2d at 630-32.  He explained:

> The scene in question lasts only three-and-a-half minutes, and the [machine] appears in the scene sporadically, for no more than a few seconds at a time.  More importantly, the pinball machine is always in the background; it is never seen in the foreground.  It never appears by itself or in a close-up.  It is never mentioned and plays no role in the plot.  It is almost always partially obscured (by Gibson and pieces of furniture), and is fully visible for only a few seconds during the entire scene.  The Designs (on the backglass and playfield of the pinball machine) are never fully visible and are either out of focus or obscured.  Indeed, an average observer would not recognize the Designs as anything other than generic designs in a pinball machine.

*Id.* at 632-33.  For similar reasons, Judge Chin found the plaintiff's trademark claim wanting as well.  "On a viewing of the Film," he reasoned, "it would be difficult for even a keen observer to pick out Gottlieb's trademark, as it appears in the background of the scene.  The trademark is

4

visible at various places on the pinball machine, but it occupies only a minute fraction [of] the frame for three segments lasting approximately three seconds each." *Id.* at 634-35. "In these circumstances," he concluded, "Gottlieb's assertion that the appearance of its trademark in the Film would confuse ordinarily prudent consumers as to the sponsorship or affiliation of its pinball machines is simply not plausible." *Id.* at 635.

If Gottlieb's claims were implausible, Gayle's border on frivolous. Whereas Gottlieb's claims were based on three-and-a-half minutes of film, Gayle's claims are premised on a fleeting shot of barely visible graffiti painted on what appears to be a dumpster in the background of a single scene.[1] The overall scene is brief, and the graffiti at issue appears on screen for no more than two to three seconds. (*See* Video at 46:21-46:24). Moreover, the graffiti is never pictured "by itself or in a close-up," and it plays absolutely no "role in the plot." *Gottlieb*, 590 F. Supp. 2d at 632. Instead, the camera is focused on the actress in the foreground, who is well-lit and depicted in an eye-catching bright-red dress. By contrast, the graffiti is, at best, shown in the background at an oblique angle and in low, uneven light such that it is "never fully visible," let alone legible. *Id.* In fact, the graffiti is hard enough to notice when the video is paused at the critical moment. (*See* Am. Compl. 8). It is next to impossible to notice when viewing the episode in real time. In short, the graffiti "was filmed in such a manner and appears so fleetingly that . . . there is no plausible claim for copyright infringement here." *Gottlieb*, 590 F. Supp. 2d at 634; *see also Sandoval*, 147 F.3d at 218 ("Because [the plaintiff's] photographs appear fleetingly and are obscured, severely out of focus, and virtually unidentifiable, we find the use of those

---

[1]     The Court may consider the episode — a video copy of which was submitted on DVD as Exhibit A to the Declaration of Rachel F. Strom (Docket No. 11 ("Video")) — as it is incorporated by reference in Gayle's complaint and central to his claims. *See, e.g.*, *Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.,* 369 F.3d 212, 217 (2d Cir. 2004); *Gottlieb*, 590 F. Supp. 2d at 629 n.1.

photographs to be *de minimis*.").  And given how "difficult" it would be "for even a keen observer to pick out" Gayle's trademark (if, indeed, it even qualifies as such), "no viewer" of the episode "would consider whether [HBO] sponsored the [graffiti] or [Gayle] sponsored the [episode]."  *Gottlieb*, 590 F. Supp. 2d at 635-36; *see also Louis Vuitton Malletier S.A. v. Warner Bros. Enter. Inc.*, 868 F. Supp. 172, 184 n.19 (S.D.N.Y. 2012) (finding "the possibility of sponsorship confusion" was "unlikely").

As evidence that his graffiti was "visible & observable to average lay viewers," Gayle points to an Instagram message from a user named "Goldpoo_" congratulating him on the appearance of the graffiti in the episode of *Vinyl*.  (*See* Docket No. 26 ("Gayle Decl."), ¶ 4; *see also* Am. Compl. 9).  But the anonymous "Goldpoo_" is hardly a stand-in for the "average lay observer" relevant to the copyright inquiry, *Sandoval*, 147 F.3d at 218, or the "ordinary prudent purchasers" relevant to the trademark inquiry, *Star Indus., Inc.*, 412 F.3d at 383 (internal quotation marks omitted).  Citing a YouTube video featuring "members of the series' [sic] production team detailing the importance of graffiti" in "recreat[ing] . . . the 1970s New York City theme," Gayle also asserts that HBO's use of his graffiti cannot be deemed *de minimis* because it was "certainly deliberate" and "very much consequential."  (Gayle Decl. ¶ 4).  But putting aside whether the Court can even consider such extrinsic evidence at this stage of the litigation, HBO's motive in depicting the graffiti is irrelevant to the *de minimis* inquiry. "[W]here the use is *de minimis*," as here, "the copying will not be actionable, even where the work was chosen to be in the background for some thematic relevance."  *Gottlieb*, 590 F. Supp. 2d at 634; *see id.* (dismissing a copyright claim as *de minimis* even though the copied work was "undoubtedly . . . chosen by the production staff because it fit in with the 'sporty' theme of the background in the scene"); *see also Sandoval*, 147 F.3d at 218 (deeming the use of copyrighted

photographs in the background of a film set *de minimis* because, "though selected by production staff for thematic relevance, or at least for [their] decorative value, [the photographs were] filmed at such distance and so out of focus that a typical program viewer would not discern any decorative effect that the work of art contributes to the set" (citation omitted)).

Accordingly, Gayle's copyright and trademark claims must be and are dismissed, leaving only his state-law "unfair competition & trademark infringement" claims. (*See* Am. Compl. ¶ 5). In general, where a court dismisses all of a plaintiff's federal claims before trial, as here, it should decline to exercise supplemental jurisdiction and dismiss his state-law claims "as well." *Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998); *accord Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Despite that general presumption, however, the Court concludes that, in the interest of judicial economy, it should exercise supplemental jurisdiction over the state-law claims here. That is because, for purposes of this case, there are no material differences between the standards that apply to Lanham Act claims and the standards that apply to New York trademark and unfair competition claims. *See, e.g.*, *Coach, Inc. v. Horizon Trading USA Inc.*, 908 F. Supp. 2d 426, 435 (S.D.N.Y. 2012) ("[T]he standards for trademark infringement . . . under New York common law are essentially the same as under the Lanham Act."); *Gottlieb*, 590 F. Supp. 2d at 637 (dismissing state-law unfair competition and trademark claims under similar circumstances). Given that, and the Court's decision on Gayle's Lanham Act claims, it would be the height of inefficiency, and risk inconsistency, to defer a decision on his state-law claims to a state court; instead, those claims are dismissed for the reasons his Lanham Act claims were dismissed. *See, e.g.*, *Williams v. N.Y.C. Dep't of Health & Mental Hygiene*, No. 16-CV-3691 (JMF), 2018 WL 1276872, at *6 (S.D.N.Y. Mar. 12, 2018)

(dismissing state-law claims for similar reasons); *Nunez v. N.Y. State Dep't of Corr.*, No. 14-CV-6647 (JMF), 2017 WL 3475494, at *4 (S.D.N.Y. Aug. 11, 2017) (same).

For the foregoing reasons, HBO's motion to dismiss is granted, and Gayle's Amended Complaint is dismissed in its entirety.[2]  Moreover, the Court declines *sua sponte* to grant Gayle leave to amend his complaint.  Although leave to amend a complaint should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), "it is within the sound discretion of the district court to grant or deny leave to amend," *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  Here, leave is unwarranted for several reasons.  First, the problem with Gayle's claims is "substantive" and, thus, "better pleading will not cure it."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).  Second, Gayle was already given a prior opportunity to amend and was warned that he would "not be given any further opportunity to amend the complaint to address issues raised by the motion to dismiss."  (Docket No. 17, at 1-2).  Finally, Gayle "has not requested permission to file a [further] Amended Complaint, nor has [he] given any indication that [he] is in possession of facts that would cure the problems identified in the instant motion to dismiss."  *Reynolds v. City of Mount Vernon*, No. 14-CV-1481 (JMF), 2015 WL 1514894, at *5 (S.D.N.Y. Apr. 1, 2015) (internal quotation marks omitted).

Further, this Court certifies pursuant to Title 28, United States Code, Section 1915(a)(3) that any appeal from this Memorandum Opinion and Order would not be taken in good faith, and *in forma pauperis* status is thus denied.  *See Coppedge v. United States*, 369 U.S. 438, 444-45

---

[2]     Gayle names three other Defendants in his Amended Complaint — Strom, Adam Lazier, and Steve Sapienza — but he never sought summonses for them, let alone served them.  (*See* Am. Compl.; Docket No. 21 ("Def.'s Mem."), at 4 n.2).  In addition, the Amended Complaint includes no allegations with respect to them.  In any event, as the defects in Gayle's claims are not specific to HBO, his claims are dismissed against the other Defendants as well.

(1962).  The Clerk of Court is directed to terminate Docket No. 20, to mail a copy of this

Memorandum Opinion and Order to Gayle, and to close the case.[3]


        SO ORDERED.

Date:   May 1, 2018
        New York, New York

_____
        JESSE M. FURMAN
    United States District Judge

---

[3]     On April 27, 2018, Gayle filed a letter requesting permission to submit a copyright registration "as an additional exhibit."  (Docket No. 34).  In light of the dismissal of Gayle's claims on other grounds, the request is denied as moot.